Michael Ducas and John Ducas, members of a religious group known as Jehovah's Witnesses, and claiming to be ordained ministers, were arrested in the City of Monroe and each was charged by affidavit with resisting a police officer while in the discharge of his duty, in violation of Municipal Ordinance No. 2532.
Sections 1 and 2 of the ordinance, which was adopted on August 9, 1927, read as follows, to-wit:
"Section 1: Be it ordained by the City Council of the City of Monroe, Louisiana, in legal and regular session convened, that it shall be unlawful for any person to resist, obstruct, impede or interfere with any police officer of the City of Monroe in the exercise and discharge of his duty. *Page 973 
"Section 2: Be it further ordained, etc., That any person who shall violate any provision of this ordinance shall, upon conviction, be fined not more than Two Hundred and Fifty and no/100 ($250.00) Dollars, or imprisoned not more than sixty (60) days, or shall suffer both fine and imprisonment at the discretion of the court."
Section 3 of the ordinance contains the repealing clause and provides that the ordinance shall take effect ten days after its promulgation.
Upon their arrest, each of the parties was placed under a bond of $100 to appear for trial in the City Court of Monroe. The cases were consolidated for trial in the City Court and upon the trial, defendants were found guilty as charged. Michael Ducas was sentenced to pay a fine of $200 and in default of payment of the fine, to serve 200 days in jail, and John Ducas was sentenced to pay a fine of $25 and in default of payment of the fine, to serve twenty-five days in jail. Defendants appealed from their convictions and sentences to the Fourth Judicial District Court for the Parish of Ouachita. The appearance bond of Michael Ducas was fixed at $400 and the appearance bond of John Ducas was fixed at $50.
The cases were consolidated and heard de novo before David I. Garrett, one of the judges of the Fourth Judicial District Court. A leading member of the Monroe Bar appeared at the trial as a special prosecutor to assist the attorney representing the municipality. The judge of the district court affirmed the conviction and sentence *Page 974 
of the City Court as to each defendant. Upon the refusal of their motions for a new trial, the defendants applied to this Court for writs of certiorari, mandamus and prohibition. A writ of certiorari was granted and a rule nisi with a stay order was issued.
The judge of the district court ordered that the relators be released on the bonds already posted pending their application to this Court for writs. Notwithstanding the order of the trial judge, counsel representing the City of Monroe instructed the police to arrest and imprison both relators. Pursuant to these instructions, Michael Ducas was immediately arrested and placed in jail, thereby forcing him to resort to a writ of habeas corpus to obtain his release. The instructions apparently were not carried out as to John Ducas.
In the month of April, 1942, the relators appeared in the City of Monroe, where they were assigned to work as special Evangelistic ministers by the Watchtower Bible and Tract Society, a religious organization, domiciled in the City of New York. Their entire time is devoted to their ministerial work, which they continuously and publicly carried on in Monroe from the time of their arrival in that City.
On Sunday afternoon of January 24, 1943, relators, in the performance of their ministerial duties, had arranged for a "bible study" for the benefit of several negro families who apparently had expressed a desire to attend the classes. For the convenience of these negro families, relators had arranged to call at their homes for the purpose of taking them, in their *Page 975 
automobile, to the place where the study of the bible was to be held. At about three o'clock on that particular afternoon, after picking up Eugene Otis who had arranged to attend the meeting, relators drove their car to the home of Richard Logan on South Twenty-third Street. The automobile was stopped beside a truck which was parked against the curb.
Michael Ducas, who was driving the car, then stepped out of it and walked up to the home of Logan and knocked on the door, informing the occupants when they responded that he was ready to take them to the bible study. He was then told that several members of the family had planned to attend the study and that they would be ready to leave in a few minutes. So he returned to his car to wait for them. He sat in the car for "five or ten minutes" when the wife of Logan came out to the car prepared to leave. As the remaining members of the family showed no indication of being ready, he returned to the house "to hurry them" and then went back to his automobile and stood by it on the curb side, helping the wife of Logan into the car and at the same time motioning for the other members of the family then coming out of the house to hurry. At this moment, the engine of a car which had been parked at the corner a few yards behind the relators' car was started and that car was rapidly driven to a point directly in front and in the path of relators' car where it was brought to a stop, thus blocking any forward movement on the part of relators. By this time all the passengers were in, or nearly in, relators' car and Michael Ducas walked around the front of his car *Page 976 
toward the driver's seat, not noticing the man who was then getting out of the other machine.
J.M. Busby, a police officer of the City of Monroe, who was dressed in civilian clothes, testified that he was the driver of the car, which was not marked or identified as a police car, that blocked the way of the relators' car, when he saw the relators calling at the home of the colored people. This impressed him as "dangerous and suspicious" conduct, and he therefore kept a close watch on relators. He admitted that he had no complaint against the relators and that he had no warrant for their arrest.
Several witnesses testified that officer Busby alighted from his car and motioned for the relator, Michael Ducas, to stop, walked toward him, and at the same time took his police badge out of his pocket, holding it in his hand. Michael Ducas testified that when he was approached by the officer he did not realize that he was a police officer, and he denied that he saw the badge or that the officer at that time told him he was a policeman. Ducas stated that he was under the impression that the man was "somebody there to interfere with my work." Officer Busby, seeing that Michael Ducas was intent on getting into his car, called out to him "to come here," and "what are you going to do with those colored people?" Whereupon Ducas replied that he was in a hurry, that he was going to the bible study and that "it was none of his (Busby's) business," and then immediately climbed into his car behind the steering *Page 977 
wheel, closing the door, and attempted to start the motor.
There is some conflict in the evidence as to what occurred immediately thereafter. The preponderance of the evidence shows, however, that the officer Busby reached his hand through the open window of the relators' car in an attempt to turn off the ignition key and thus prevent the moving of the car, at the same time stating, "you aren't going anywhere." Michael Ducas put his hand over the key as the officer reached into the car to turn it off and a short argument ensued. As he reached for the key, officer Busby struck his hand against the window of relators' car, or some projection on the dashboard, and was slightly injured. The motor of relators' car continued to run and Michael Ducas asked the officer, "who are you and what authority do you have to meddle in my affairs?" The officer then showed his badge and identified himself as a policeman, at the same time announcing that Michael Ducas, as well as his brother, John Ducas, were under arrest. Up to that moment, John Ducas had not moved from his position or taken any part in the argument whatever. He was a mere spectator of the incident. Michael Ducas then turned off the ignition key and the officer reached his hand through the window of relators' car the second time and removed the key. Neither of the relators offered any resistence. Michael Ducas, however, informed the officer that he was a "minister of the Christian Bible Educational work," and that the officer had no right to arrest or to stop him for an alleged investigation. *Page 978 
John Ducas, who was quietly sitting in the car, got out of the car when he heard the officer say they were under arrest. Eugene Otis, the negro man who was also sitting in the car, got out of the car at the same time. They walked around to the front part of relators' automobile where the officer was standing. Michael Ducas told Richard Logan, the negro man in front of whose home the incident took place, that "they were being taken to jail," and directed him to go to the place where the bible study was to be held. Officer Busby testified that he took relators by the arm and ordered them to get into his car, but both jerked loose from him and advanced on him as if to attack him. As to this, he is flatly contradicted by both relators and the evidence otherwise preponderates against his statement. We are satisfied from all the evidence in the case that after Michael Ducas realized that Busby was a police officer, both he and his brother, John Ducas, submitted to arrest without any further protest by Michael Ducas. Officer Busby then called for assistance over his police radio. After the other officers arrived at the scene, the relators were taken to the City Jail where affidavits were made against them and they were placed under bonds to appear for trial in the City Court.
The offense here charged is the resistance of an officer in the lawful discharge of his duties. What those duties were are not set forth. What law relators were alleged to be violating and the officer was attempting to enforce is not referred to in the charge. *Page 979 
The facts which we have hereinabove narratively set forth show, without contradiction, that at the time of their arrest neither of the relators was engaged in committing or attempting to commit any offense. The only reason assigned by the police officer for arresting them was that their conduct appeared to be "dangerous and suspicious." But this statement is a mere conclusion on the part of the police officer. The undisputed evidence shows that relators were not acting either in a dangerous or suspicious manner, but that they were conducting themselves in an entirely peaceable and proper manner. No complaint had been made against either of relators; no warrant had been issued for their arrest; neither of them had been guilty of violating any law. As a matter of fact, no charge other than that growing out of their alleged resistance to arrest was made against relators, but their prosecution on that charge was apparently pressed with the utmost vigor.
The right of personal liberty is one of the fundamental rights guaranteed to every citizen, and any unlawful interference with it may be resisted. Every person has a right to resist an unlawful arrest; and, in preventing such illegal restraint of his liberty, he may use such force as may be necessary. 4 Am.Jur., Arrest, sec. 92, p. 63.
Considering the case from a purely legal standpoint, it is obvious that officer Busby was not authorized to arrest the relators, since they were not guilty of violating or attempting to violate any law. Therefore, it is difficult to see how the relators could *Page 980 
be legally charged with resisting the officer who was acting without proper authority if, in fact, they did resist him.
A prosecution will not lie for resisting an officer where the officer is attempting to make an unlawful arrest.
Considering the case from a factual standpoint, it is equally obvious that John Ducas did nothing and said nothing to justify his arrest and conviction for resisting an officer. Nor was there any justification for the arrest and conviction of Michael Ducas for committing the same offense.
Suddenly confronted by a man dressed in civilian clothes, alighting from an unidentified automobile, commanding him "to come here," and demanding to know "what he was doing," it was a perfectly natural reaction for Michael Ducas to reply that it was none of the inquirer's business and to get into his car and attempt to start the motor. Michael Ducas did state that he was going to a bible study and that he was in a hurry. It was also a perfectly natural conclusion on the part of Michael Ducas that he should consider, as he testified, that his unknown inquirer was a person opposed to his religious views and that he was there for the purpose of interfering with Ducas' work and for Ducas to resent the interference accordingly. After the officer announced that he was a policeman and displayed his badge, Michael Ducas made no attempt to move his car, nor did he offer any further protest against the act of the officer in interfering with his movements. It therefore affirmatively appears that there is a total lack of evidence to support the charge that Michael Ducas *Page 981 
resisted an officer while in the discharge of his duties, and hence his conviction and sentence on the charge can not be permitted to stand.
For the reasons assigned, the rule nisi herein issued is made absolute, and accordingly the convictions and sentences of the relators Michael Ducas and John Ducas are annulled, and they are ordered to be forthwith discharged.
HAMITER, J., concurs in the decree.