H. GARLAND PAVY, Judge Pro Tern.
Plaintiff-appellant appeals from a judgment denying recovery of his tort claim growing out of his arrest and detention by officers of the City of Ville Platte in Evangeline Parish. Defendant sued the city, four of its policemen and Leroy Fonte-not who owned the Kit Kat Lounge at which place the arrest occurred.
The claim against Mr. Fontenot, the lounge owner, stems from an attack upon plaintiff by Stephen Vidrine, allegedly then in the employ of Mr. Fontenot. That claim has been informally abandoned in the appellate court and we will not rule on it.
On Saturday, February 20,1982, plaintiff and a companion, Robert Davis, both from Calcasieu Parish, proceeded to a camp near Mamou in Evangeline Parish. They were to remain there for the weekend and the Mardi Gras holidays the next week. That Saturday afternoon they went to Ville Platte and visited various entertainment spots. Sometime during the latter part of the evening they were in the Kit Kat Lounge for the second time. A difficulty arose concerning plaintiff. The owner, Fontenot, called the police and he and Stephen Vidrine, a sometime employee at the lounge, had plaintiff and Davis leave the lounge. Outside, as plaintiff and Davis were going to the car, a further difficulty arose between plaintiff and Stephen Vid-rine, who hit plaintiff supposedly when plaintiff swung at him. About that time the police arrived. Upon instructions or request from the lounge owner, Fontenot, the police officers arrested plaintiff and Davis.
The details of these two incidents, inside and outside the lounge, are in dispute. They will be referred to only as necessary as we are not concerned with the liability of either Fontenot or Vidrine.
At the police station plaintiff and Davis were placed in separate rooms. Officer Hargrave was to process plaintiff and Officer Fontenot was with Davis. Officer Fon-tenot left with Lt. Roy Jenkins to answer a call. According to Officer Hargrave, when he asked plaintiff to empty his pockets, plaintiff assumed a karate-like stance in defiance of the order. Hargrave approached plaintiff, and they engaged in struggling or scuffling. Plaintiff had brain surgeries which left a partially plastic skull; he was subject to epileptic seizures. He claimed that when Hargrave gave the order he was attempting to explain his condition and that his left side became nonfunctional from paralysis or a seizure and his left hand was caught in his left pocket which held his antiseizure medication.
The dispatcher, Joe Doucet, joined the officer in the struggle with plaintiff. Shortly thereafter Officer Fontenot and Lt. Jenkins returned from the call and they joined in the struggle. Plaintiff claimed he was beaten several times, passed out because of a seizure and regained consciousness later at the hospital. Lt. Jenkins admitted hitting plaintiff once on the back with his night stick and causing him to fall. Officer Fontenot stated that Jenkins hit plaintiff three or four times. Officer Fon-tenot admitted he also used his stick on plaintiff but claimed it was only to punch or poke him.
*960 Plaintiff was carried to his cell by the four policemen. Apparently he was unconscious. Davis, in another room during this episode, heard the scuffle and plaintiff hollering during the struggle. He saw them carry plaintiff to the cell and told them of plaintiffs epileptic condition. Plaintiff was taken to a hospital by ambulance. There was an argument about responsibility for the hospital charges. Ultimately, plaintiff was sedated with Valium and Dilantin and returned to jail. He awakened the next morning and was bonded out.
Dr. Landreneau, who was in attendance at the hospital, remembered little about the episode and relied on his notes. They showed plaintiff had a two-centimeter laceration of his left forehead and was brought to the emergency room because of a focal seizure activity in the left leg. Plaintiff was alert and oriented and was having no seizure activity at the time.
Pictures taken of plaintiff the next day show the scalp laceration and several markings on his back. These were narrow, elongated rectangles with discoloration only along the edges.
The trial judge concluded, in pertinent part, as follows:
“Plaintiff, a known drug user and dealer who has been convicted both in Louisiana and Florida served time in the penitentiary, acted in a manner calculated to annoy and alarm law-abiding citizens in a public place; that he attempted to sell drugs and marijuana to a barmaid at the Kit Kat Lounge; that he provoked a fight with Stephen B. Vidrine, and resisted the police when they sought to arrest him; that further he became violent and uncontrollable at the City Jail forcing the police officers to use force to restrain him, and that he injured his head while struggling with the police officers.
“The court further finds that he was using medication, whether prescribed or not, which coupled with the alcohol he consumed that night, produced intoxication to a marked degree.
“That the police officers acted in a lawful manner in arresting and subduing plaintiff.”
Plaintiff contends that his arrest was without probable cause, that he had the right to resist the unlawful arrest and that, even if the arrest was lawful, unreasonable force was used at the police station and the officers wrongly failed to heed his warning or explanation as to his condition.
Officers Hargrave and Fontenot arrested defendant. Lt. Jenkins arrived shortly thereafter. According to the two arresting officers plaintiff was arrested on the instructions of Leroy Fontenot, the lounge owner, for a disturbance or disturbing the peace or knocking over chairs. There is no evidence that either of the police officers interrogated the lounge owner or anyone else or conducted any type of summary investigation to substantiate the arrest. An affidavit filed the following day and signed by Officer Hargrave listed charges against plaintiff of resisting arrest, battery upon officers and threatening officers and disturbing the peace under Revised Statutes 14:103, subd. 7. This latter provision was repealed by Act 222 of 1979. The other charges in the affidavit must have occurred after the initial arrest. They cannot serve as a basis for it. Article 213 of Code of Criminal Procedure provides:
“A peace officer may, without a warrant, arrest a person when ... (3) the police officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer;”
There was evidence that plaintiff knocked over some stacked chairs in the lounge. They were restacked without any substantial commotion. The barmaid testified that plaintiff had tried to sell her a controlled dangerous substance. Plaintiff had two previous convictions for dealing in cocaine and marijuana. None of this was known to any of the parties that night. It is doubtful that the barmaid told anyone about the proposed sale before the arrest. Moreover, neither the officers nor the lounge owner proposed that as a basis for the arrest.
*961 There is evidence that plaintiff was jumping up and down in the club and may have become offensively intrusive upon another customer. These may be reasons to eject plaintiff but none of them come within the definition of disturbing the peace as set out in Article 103 of the Criminal Code (R.S. 14:103). That definition of disturbing the peace provides that, to come within the criminal prohibition, an act must be done in such a manner as to “ ... foreseeably alarm or disturb the public....” Clearly this requirement was not met in this case.
There was no violation of the disturbing the peace statute. There was no substantial evidence of such a violation. The particular section of the disturbing the peace statute listed on the affidavit had been long repealed. All other crimes listed in the arrest affidavit occurred after the arrest. The officers made no inquiry or investigation. They unjustifiably relied on the demand of the lounge owner. There was no probable cause and the arrest was unlawful.
Having concluded that the arrest was unlawful, we now apply that rule to plaintiff’s claim for damages.
It is well settled that a citizen has a right to resist an unlawful arrest. State v. Lindsay, 388 So.2d 781 (La.1980); White v. Morris, 345 So.2d 461 (La.1977); and City of Monroe v, Ducas, 203 La. 971, 974, 14 So.2d 781 (1943).
Plaintiffs injuries in the struggle at the police station, whether from the blows of officers or from his own activity and whether intended to or not, were the result of either his resisting an unlawful arrest or actions taken by the officers in furtherance of an unlawful arrest.
Plaintiff is entitled not only to damages for the physical injuries but also for the unlawful detention and the emotional aftermath of the whole episode. No expert testified on plaintiffs behalf regarding the effect of the incident on his emotion condition and seizure problem. There is plausible evidence that the antiseizure medicine had to be increased because of the additional stress induced by the episode and that plaintiff suffered nightmares not previously known to him. We think that the whole affair had more than just an immediate effect on plaintiff and that it continued for some time but not to the extent or for the duration described by his lay witnesses.
The rule announced in Norrell v. City of Monroe, 375 So.2d 159 (La.App. 2d Cir. 1979), regarding reduction of damages for provocation is applicable here. Plaintiffs conduct, while not criminal, did contribute to the original arrest and to the struggle that ensued at the police station.
Considering the relatively minor nature of the physical injuries, the emotional aftereffects and the necessity for mitigation, we fix recovery at $1,500.
Officer Doueet was not at the arrest. He had only one arm. While there is evidence that he participated somewhat in the struggle it is unlikely that he contributed to any extent to the plaintiffs injuries. Pie should not be cast.
Lt. Jenkins was supervisor of the shift. He was at the arrest and must have approved of it. The other two officers, Fon-tenot and Hargrave, made the arrest. All three of them engaged in the struggle to a substantial degree. It is impossible to separate the damages or attribute damages to any of these officers separately. Each must be held for the overall result.
No claim is made to exonerate the city from the rule of respondeat superior, and it must be cast with the officers.
The judgment of the lower court is affirmed insofar as it dismissed the actions against Leroy Fontenot and Joe Doueet. Otherwise, it is reversed and there is now judgment against Roy Jenkins, Thomas Fontenot and Romeo Hargrave and the City of Ville Platte, in solido, for the sum of $1,500 plus legal interest from judicial demand and all costs in both courts.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED