661 So.2d 428 (1995)
CITY OF MONROE
v.
Lonnie GOLDSTON.
No. 95-KK-0315.
Supreme Court of Louisiana.
September 29, 1995.
Rehearing Denied November 3, 1995.
PER CURIAM.
Granted. A melee involving relator and members of the Monroe City Police "Jump Team" led to relator's arrest and conviction in the Monroe City Court for various municipal offenses in March, 1994. Relator appealed to the Fourth Judicial District Court, La.R.S. 13:1896(B), which affirmed four of the verdicts but reversed his conviction for disturbing the peace with profane language. The Second Circuit denied review on grounds that the evidence supported the other verdicts returned by the city court and relator has sought relief in this Court from his convictions and sentences for criminal trespass, interfering with a police officer, resisting arrest, and simple battery on a police officer. After an independent review of the testimony at trial, we grant the relator's application and set aside his remaining convictions and sentences.
*429 Relator's confrontation with members of the "Jump Team," a unit designed to address problems in Monroe's high crime areas, occurred on March 5, 1993, in a parking lot of the Parkview Apartments, a large housing complex, where relator was supervising his nieces and nephews while his sister, who lived in the complex, went shopping for a barbecue they had planned. The officers were investigating an unrelated incident involving teenagers drinking and reportedly playing with a gun (later determined to be a BB gun), and Officer Phil Stansell sought to clear an area approximately 50 yards away where a large number of bystanders had gathered. The officer came upon relator, who had been sitting on a car with one of his young nephews, and told him to move on with the others. Relator stood his ground and suggested in words meant for everyone around him that "the only problem he saw was the police." Stansell then grabbed relator's arm and attempted to arrest him for interfering with an officer and for criminal trespass. Relator pulled back and the arrest ultimately required several other members of the Jump Team, including Victor, the canine partner of Officer Vince Hodnutt, who observed Stansell speak at length with relator and drove his patrol unit over to back up his fellow officer. In the fracas, Stansell suffered a long cut extending from behind his ear to his cheek, caused by the ring relator was wearing when he lashed out during a struggle to break free of the hold placed around his neck by Officer Hodnett. Relator and Hodnett then fell to the ground as Victor leapt from the patrol unit and began biting relator's legs and arms. Hodnett eventually pulled Victor off relator, who required medical treatment at a local hospital before his incarceration in the Monroe city jail.
Less than a month before this incident, Officer Stansell had participated with other officers of the Jump Team in the removal of relator from the same parking lot of the complex. The police had acted on a complaint by employees of the property management company operating Parkview that relator appeared to be sleeping overnight in the van he had parked on the lot in violation of HUD regulations. On that occasion, Officer Torregrossa informed relator that "he would have to leave due to the complex not allowing people to live in their vehicles." Torregrossa told relator not to return. According to Jeff Underwood, the vice president of the property management company, Parkview Apartments had given the police general authority to remove undesirable persons from the property by enforcing the city's ordinances. To that end, the company had erected a security fence around the property patrolled by private security officers and maintained a list of individuals permanently banned from the complex. That fence and list did not exist in March of 1993, however, and to Underwood's knowledge, no person had been permanently banned from the complex at that time. Parkview leases otherwise state that residents are allowed to have guests visit them and require notice to management only if the guests stay more than 14 days.
Section 12-90 of the Monroe Criminal Code provides in pertinent part that criminal trespass is "[ ] the refusing to leave the premises of another when reasonably requested to do so by the lawful custodian or his representative...." The provision is similar to La.R.S. 14:63, the state criminal trespass law, under which a reasonable contemporaneous or written request to leave the premises is "an indispensable element of the offense." State in the Interest of J.A.V., 558 So.2d 214, 215 (La.1990) (citing State v. Johnson, 381 So.2d 498 (La.1980)). While the evidence at trial established that the police had ordered relator in February of 1993 to leave the Parkview complex and not return, the city offered no evidence that Stansell had sought to enforce that ban a month later when he told relator, along with the other bystanders, to clear the immediate area. Absent that request to vacate the premises, relator did not violate the city trespass ordinance by refusing to comply immediately with Stansell's order, and the officer lacked probable cause to place relator under arrest for that offense.
Nor did relator violate Section 181.1 of the Monroe Criminal Code, which defines the offense of interfering with a police officer as "the intentional delaying or obstructing of an individual acting in his official capacity *430 and authorized by law to make a lawful arrest, investigation, seizure of property, or service of process." At the time Stansell asked him to move on, relator was not under arrest nor suspected of any crime. The ongoing investigation did not involve relator and took place approximately 50 yards away from where he was sitting. Compare State v. Pickering, 432 So.2d 1067 (La.App. 3rd Cir.1983) (defendant's repeated efforts to wander away from the officers after they stopped his car for suspicious activity, followed by the defendant's flight from the officers, interfered with the investigation for purposes of La.R.S. 40:1390); Nigreville v. State Department of Public Safety, 415 So.2d 600 (La.App. 3rd Cir.1982) (during investigation of his car accident, the defendant interfered with the officers when he became physically aggressive with them and threatened to attack them). Officer Stansell's request to relator was the same request he made to every other individual in the area he was trying to clear. Furthermore, there was no evidence that relator's reluctance to move delayed or obstructed the unrelated investigation or Officer Stansell's performance of his duties in conducting crowd control while the other members of the Jump Team continued the actual investigation. Officer Torregrossa estimated that he was still some 35 yards away investigating the BB gun incident when the altercation with relator occurred. That investigation became delayed and obstructed only after Officer Stansell grabbed relator's arm and attempted to place him under arrest. It was at that point that the other members of the Jump Team came to the aid of Stansell and the melee ensued. Until then, relator's conduct lacked a sufficient nexus with the investigation underway to have interfered with it.
Because no probable cause existed for relator's arrest on either of the misdemeanor charges, relator had the right to use "such force as is necessary" to resist his unlawful arrest. City of Monroe v. Ducas, 203 La. 971, 14 So.2d 781, 784 (1943); see State v. Lindsay, 388 So.2d 781 (La.1980); City of New Orleans v. Lyons, 342 So.2d 196 (La.1977). Relator struggled with several officers and an attacking police dog, and his response in lashing out at Stansell and fortuitously hitting him with the ring he was wearing did not exceed the scope of that necessary force. To this extent, relator was not guilty of resisting a lawful arrest or of simple battery on a police officer.
Accordingly, relator's remaining convictions for criminal trespass, interfering with a police officer, resisting arrest, and simple battery on a police officer are reversed, his sentences vacated, and he is ordered discharged from custody as to those offenses.
KIMBALL, J., not on panel.