hPICKETT, Judge.'
Plaintiffs, the ■ City of Carenero and the Louisiana Municipal Risk Management Agency Workers’ Compensation Fund, appeal a judgment of the trial court granting summary judgment in favor of the defendant, Kevin T. Faulk, and dismissing their claims at their cost. For the reasons set out below, we affirm.
.FACTS
This action results from an altercation between the defendant, Kevin T. Faulk, and Police Officers Andrew Hubbard, Neddie Falcon, and Joey Desormeaux[1] of the Caren-ero Police Department. On February 18, 1996, the officers were on' routine patrol within the city limits of Carenero, Louisiana, during the annual Mardi Gras ^festivities. On that date, Officers Falcon and Hubbard were dispatched to the R & R Lounge in response to reports that fights were in progress at the establishment. Officer Desor-meaux also arrived on the scene to serve as backup, if necessary. During this time, Mr. Faulk was in the bar with his girlfriend, Leticia Clark. After Ms. Clark’s aunt became involved in a fight, Mr. Faulk escorted Ms. Clark from the bar.[2] Once they were in the parking lot, Mr. Faulk testified that the woman with whom Ms. Clark’s aunt had been fighting ran toward them in an effort to resume the fight. Mr. Faulk testified that he intervened in an effort to prevent another fight.
However, Officer Falcon testified that the argument involved Mr. Faulk, Ms. Clark and another girl. He further testified that upon separating the two ladies, Mr. Faulk and another male started arguing. Officer Falcon asked Mr. Faulk to leave the area, and Mr. Faulk agreed. Officer Falcon then grabbed Mr. Faulk’s arm to escort him from the area. Mr. Faulk jerked his arm away, yelled some words, and began returning to the crowd of people that had gathered outside the lounge. Upon observing these events, Officer Desormeaux testified that he attempted to escort Mr. Faulk away for further investigation. Officer Desormeaux further stated that at that point, Mr. Faulk attempted to jerk his arms free, cursed him, and then elbowed him in the right arm. Officer Desormeaux also testified that Mr. Faulk jerked his arms away as he was attempting to place handcuffs on him and arrest him for resisting an officer. In response, Officer De-sormeaux testified that he then grabbed Mr. Faulk around the waist and attempted to take him to the ground in an effort to detain him. Officer Hubbard and Officer Ronald Richard both grabbed Mr. Faulk in an attempt to get him to the ground. Thereafter, Mr. Faulk and all of the officers fell into a ditch. As a result of the fall, Officer Hubbard injured his knee and ankle which required him lato receive medical treatment and disabled him from work for a period of approximately four months.
*571 Subsequently, Mr. Faulk was cited for failure to move on, resisting arrest, and battery on a police officer. Ten days later Mr. Faulk was further cited for simple criminal damage to property and public intimidation. Mr. Faulk was originally charged in the Carenero Mayor’s Court, however, the charges were dismissed. Thereafter, Mr. Faulk agreed to attend the district attorney’s pretrial diversion program. Mr. Faulk successfully completed the program and no charges were instituted by the district attorney’s office.
As a result of the incident, the City of Carenero and the Louisiana Municipal Risk Management Agency Workers’ Compensation Fund filed suit against Mr. Faulk seeking reimbursement for workers’ compensation disability benefits and medical benefits paid on behalf of Officer Hubbard.[3] Mr. Faulk filed a motion for summary judgment arguing that his arrest was illegal, and any force used was the minimal force necessary to resist the unlawful arrest. A hearing on the motion was held on August 18,1997. On September 8, 1997, a judgment was entered in favor of Mr. Faulk, granting his motion and dismissing the plaintiffs’ claims at their costs. Plaintiffs now appeal.
OPINION
Plaintiffs allege one assignment of error in their appeal, namely, the trial court erred in granting Mr. Faulk’s motion for summary judgment and dismissing the plaintiffs’ claims where there exist genuine issues of material facts as to the lawfulness of the arrest of the defendant and as to whether Mr. Faulk’s resistance of arrest was justified and reasonable.
|4Áppellate courts review summary judgments de novo applying the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Ponthier v. Brown’s Mfg., Inc., 95-1606 (La.App. 3 Cir. 4/3/96); 671 So.2d 1253. There are basically two steps in deciding whether to grant a summary judgment. First, the mover for summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact through the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any. Liem v. Austin Power, Inc., 569 So.2d 601 (La.App. 2 Cir.1990). A genuine issue is a triable issue. McCrae v. Hankins, 720 F.2d 863 (5 Cir. 1983). A material fact is one whose existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery, i.e., one that would matter on a trial of the merits. Second, after it has been established that there are no genuine issues of material fact, a summary judgment should only be granted if mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966.
Act 9 of the 1996 First Extraordinary Session amended La.Code Civ.P. art. 966 by adding:
(A)(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
La.Code Civ.P. art. 966(C)(1) was also amended in Act 483 of 1997:
After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
The act also provides that the amendment is intended to further clarify Act 9 of the 1996 First Extraordinary Session, and to legislatively overrule all cases inconsistent with the holding of this court in Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691, writ denied, 690 So.2d 41 (La.3/14/97). In Hayes, 685 |5 So.2d at 694 (Citations omitted), we stated:
We find that the amended article substantially changes the law of summary judgment. Under the existing jurisprudence, the summary, judgment was not favored and was to be used only cautiously and sparingly. The pleadings and sup *572 porting documents of the mover were to be strictly scrutinized by the court, while the documents submitted by the party in opposition were to be treated indulgently. Any doubt was to be resolved against granting the summary judgment, and in favor of trial on the merits.
The jurisprudential presumption against granting the summary judgment has been legislatively overruled by La.Code Civ.P. art. 966 as amended. In effect, the amendment “levels the playing field” between the parties in two ways: first, the supporting documentation submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed.
Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under art. 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
In the case at hand, the trial court apparently concluded that Mr. Faulk’s arrest for resisting arrest was unlawful, and he was justified in resisting the officers. La.R.S. 14:108 provides in pertinent part:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase “obstruction of’ as used herein shall, in' addition to its common meaning, signification, and connotation mean the following:
(a)Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party’ is actually placed under arrest hand before he is incarcerated in jail.
(c) Refusal by the arrested party to give his name and make his identity known to the arresting officer.
(d) Congregation with others on a public street and refusal to move on when ordered by the officer.
We have previously discussed the applicability of this statute. In the case of Melan-con v. Trahan, 94-26, p.6 (La.App 3 Cir. 10/5/94); 645 So.2d 722, 726, writ denied, 95-0087 (La.3/10/95); 650 So.2d 1183 (Citations omitted), we concluded:
This statute prohibits conduct which obstructs officers acting in their official capacity while attempting to seize property, serve lawful process or make a lawful arrest. Interference with an officer’s investigation is insufficient to establish the offense. Likewise, La.R.S. 14:108(B)(l)(d) does not make the refusal to move when ordered by police a crime unless it obstructs police in their official duties in making a lawful arrest, seizure, or service of process.
In Melancon, Officer Fred Melancon and his partner were on patrol in Kaplan, Louisiana. The two officers were under orders to clear the streets of people because of trouble with race riots that had occurred the previous night, and the rumors that more trouble could transpire that night. After noticing a small group of people congregated outside of a bar, the officers requested that they either enter the bar or leave the area. According to Officer Melancon, everyone cooperated except for three men, including the defendant. The defendant began to protest loudly that he did not have to go anywhere. After several unheeded warnings, Officer Melancon told the defendant he was under arrest. As Officer Trahan attempted to grab the defendant’s arm, the defendant shoved him against the building. Subsequently, the defendant was arrested for resisting an officer in viola *573 tion of La.R.S. 14:108. Officer Melaneon and his wife sued the defendant, alleging that Officer Melaneon was injured as a result of the defendant’s resistance to arrest. The defendant filed a motion for summary judgment, alleging his arrest was unlawful and his resistance was reasonable in light hof the unlawful arrest. The 'trial court granted the defendant’s motion and plaintiffs appealed.
In finding the defendant’s arrest to be unlawful on appeal, we found:
Melaneon conceded in his testimony that he was not in the process of arresting, seizing, or serving process when he ordered or advised Trahan and his friends to move on. Because no [sic] one of these necessary predicate police activities was established, the arrest was not lawful under La.R.S. 14:108.
Melancon 645 So.2d at 726.
After concluding the defendant’s arrest to. be unlawful, we considered the issue of whether all of the material facts involving the extent of the defendant’s resistance were undisputed so as to allow a of summary judgment. In concluding that the defendant acted reasonably and summary judgment was properly granted, we stated:
Every person has a right to resist an unlawful arrest. In preventing such an illegal restraint of liberty, a person may use only such force as may be necessary under the circumstances. White v. Morns, 345 So.2d 461 (La.1977); City of Monroe v. Ducas, 203 La. 971, 14 So.2d 781 (1943). In the present case, this issue is subject to factual dispute and plaintiff contends this factual dispute precludes summary judgment. Melaneon stated that Trahan repeatedly refused to obey his orders to move on and, when told he was under arrest and physically detained, Tra-han pulled his arm from Melancon’s grasp and pushed him some 2 to 2 1/2 feet against a brick wall. As a result of this push, Melaneon allegedly suffered injuries to his head, neck and back. Trahan, on the other hand, denied pushing or hitting Melaneon and stated that he only moved his arm away from Melaneon.
In White v. Morris, supra, the defendant Morris refused to produce identification when asked to do so by Deputy White. The deputy grabbed his arm and then Morris jerked away. Another deputy then assisted in pinning Morris against the trunk of a car, but Morris broke free again. White approached him, and Morris warned him to stay back. Morris then punched White in the face with a single blow which knocked him to the ground. White suffered a broken jaw. The Supreme Court held that, under the circumstances, Morris used only so much force as necessary to repel the deputy’s aggression in attempting to make an unlawful arrest. In the ease sub judice, viewing the evidence in a light most favorable to the non-movers (that Trahan pulled his arm away and pushed Melaneon) and in light of White v. Morris, we conclude that the extent of Trahan’s resistance was reasonable under the circumstances. While the extent of Trahan’s resistance is the subject of |8a factual dispute, it is not material inasmuch as, accepting Melancon’s version as true, Trahan’s resistance was reasonable.
Melancon at 727.
In the case at hand, Officer Falcon asked Mr. Faulk to leave the area, and Mr. Faulk agreed. As Officer Falcon attempted to escort Mr. Faulk away, Mr. Faulk pulled his arm away from the officer. It was at this time that Officer Desormeaux attempted to escort Mr. Faulk from the area for further investigation. However, Officer Desormeaux failed to relay his intentions to Mr. Faulk. After Mr. Faulk cursed Desormeaux and attempted to pull his arm away, Officer Desor-meaux testified that he then decided to arrest Mr. Faulk for resisting an officer. As Officer Desormeaux attempted to handcuff Mr. Faulk, Mr. Faulk pulled his arms free and elbowed the officer in the right arm. It was at this point that the other officers joined in, and the group of men tumbled into the ditch causing the injury to Officer Hubbard.
Thus, unlike the defendant in the Melan-con case, Mr. Faulk originally agreed to voluntarily leave the area when asked. He was cooperative until Officer Falcon attempted to physically escort him from the scene. However, as in the Melaneon case, Officer Desor- *574 meaux conceded that he was not in the process of arresting, seizing, or serving process when he attempted to physically escort Mr. Faulk from the area. In fact, there was no intention by any of the officers to arrest Mr. Faulk for. any offense until Mr. Faulk attempted to pull away for the officer.
Accordingly, since none of the necessary predicate police activities under La.R.S. 14:108 were established and in light of the prior decision in Melcmcon, ■ we find Mr. Faulk’s arrest for resisting an officer was not lawful. Furthermore, in light of Melancon and White v. Morris, we find that the extent of Mr. Faulk’s resistance (elbowing Officer Desormeaux in the right arm) was reasonable under the circumstances. As such, we conclude that summary judgment was properly granted.
^DISPOSITION
For the reasons set out above, the judgment of the trial court granting summary judgment in favor of Mr. Faulk and dismissing plaintiffs’ claims at their cost is affirmed. All costs of this appeal are assessed to plaintiffs.
AFFIRMED.

. Officer Desormeaux was a reserve police officer with the Carenero Police Department.

. Mr. Faulk testified in his deposition that he feared that his girlfriend, who was pregnant at the time, would get involved in the altercation in order to aid a member of her family.

. Plaintiffs paid $2,592.96 in workers’ compensation disability benefits, and $12,387.20 for medical treatment.