859 So.2d 639 (2003)
STATE of Louisiana
v.
Chance CEASER.
No. 2002-K-3021.
Supreme Court of Louisiana.
October 21, 2003.
Rehearing Denied December 12, 2003.
*641 Richard P. Ieyoub, Attorney General, Earl B. Taylor, District Attorney, Alisa A. Gothreaux, Counsel for Applicant.
G. Paul Marx, Lafayette, R. Neal Walker, New Orleans, Counsel for Respondent.
TRAYLOR, J.
Defendant, Chance Ceaser,[1] was charged by Bill of Information with two counts of battery of a police officer in violation of La.Rev.Stat. 14:34.2(B). The jury returned a guilty verdict on both counts, but found that the second count produced no injury requiring medical attention. The trial court sentenced defendant to two years at hard labor on the first count and gave him a concurrent sentence of six months on the second. The Court of Appeal, Third Circuit, reversed the conviction and ordered the acquittal of the defendant upon a finding that the police had no probable cause to arrest the defendant for resisting an officer and, therefore, the defendant had the right to resist the unlawful arrest. 2002-374 (La.App. 3 Cir. 10/2/02), 828 So.2d 680. Upon the state's application, we granted certiorari to review the correctness of that decision. For the reasons that follow, we reverse the court of appeal and reinstate defendant's conviction and sentence.

FACTS AND PROCEDURAL HISTORY
On April 9, 2001, at approximately 2:30 p.m., the Eunice City Police received a telephone call from the home of Ms. Millie Ceaser, reporting a domestic disturbance involving the homeowner's adult son, Chance. Officer Kevin Noel and Sergeant Baxton Troy Stagg of the Eunice City Police responded to the report and heard defendant arguing with his mother and brother, Shaun, as they approached. Upon arriving at Ms. Ceaser's home, Officer Noel and Sgt. Stagg observed defendant arguing with his mother and brother in the kitchen. Ms. Ceaser insisted that the police remove defendant from her *642 home. The officers were familiar with defendant due to a history of disturbances which had caused his mother to request his removal from her home in the past. The officers entered the home and asked defendant to leave peacefully so that he could cool off and avoid an escalation of events. On this occasion, however, defendant refused to leave voluntarily, loudly saying he was not "f____ing leaving."
In an attempt to defuse the situation, Sgt. Stagg took hold of defendant's arm to escort him out of the home. In response, the defendant jerked his arm away from the officer. At this point, the officers informed defendant that he was under arrest and both officers attempted to grab hold of defendant to secure and handcuff him. Defendant began grabbing at various items on Sgt. Stagg's duty belt: pepper spray, handcuffs, radio, and gun. As the struggle progressed, defendant scratched Sgt. Stagg's face with his fingernails, bit him, and grabbed and tore Sgt. Stagg's flashlight from his duty belt and struck Sgt. Stagg on his head, behind the left ear. Sergeant Stagg withdrew and expanded his collapsible baton and struck defendant several times. Sgt. Stagg later testified that the blows, which are intended to temporarily paralyze the thigh muscle of assailants, "didn't have any effect upon him."
Meanwhile, Officer Noel attempted to restrain defendant in what he termed "a violent struggle," only to receive a blow to his own head with the flashlight defendant wielded. Officer Noel sustained a two-inch laceration to the top of his head which required five or six stitches. Defendant retreated to his bedroom and was apprehended outside the home. Thereafter, defendant was charged with two counts of battery of a police officer in violation of La.Rev.Stat. 14:34.2(B).
At trial, Sgt. Stagg testified regarding the procedure the police follow when they receive a complaint of a disturbance at a residence. He stated that two officers will respond to the call to "find out what's going on, just investigate to the best of our ability with the attitudes of the people when we get there. Normally, separate them to try to defuse the situation. It depends on how bad the arguing is or if any batteries may have been committed." Regarding the instant call, Sgt. Stagg testified that the defendant was placed under arrest when he refused to be escorted out of the house. Sgt. Stagg stated that after defendant refused to leave the home voluntarily, they attempted to escort him out "by the arm" which is a common procedure.
Officer Noel testified that after Ms. Ceaser asked that defendant be removed from her house, the officers "went to escort him out by his arms and he started struggling" and hit Sgt. Stagg on the left side of his head with a flashlight. Defendant then struck Officer Noel over his head with the flashlight, causing the laceration. Officer Noel stated that the defendant was placed under arrest for resisting the officers and "very violently" refusing to leave the home. Officer Noel testified that the defendant had not struck anyone before he was arrested.
The jury found the defendant guilty on both counts, but determined that only the battery of Officer Noel required medical attention and merited an increased sentence. The trial court accordingly sentenced defendant to two years at hard labor on the first count and gave him a concurrent sentence of six months on the second.
The Court of Appeal, Third Circuit, reversed the conviction and acquitted the defendant upon a finding that the police had no probable cause to arrest the defendant for resisting an officer and, therefore, the defendant had the right to resist the *643 unlawful arrest. 02-374 (La.App. 3 Cir. 10/2/02), 828 So.2d 680.

DISCUSSION
In order for the State to obtain a conviction for battery of a police officer, it must prove the elements of the crime beyond a reasonable doubt. Battery of a police officer has three elements: the intentional use of force upon a police officer, without the consent of the officer, when the offender knows or should reasonably know that the victim is a police officer acting within the performance of his duty. LSA-R.S. 14:34.2. The sufficiency of evidence of the crime is viewed the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
The testimony adduced at trial indicates that the uniformed officers responded to a call to remove defendant from the home and that they instructed the defendant to leave the home in accordance with him mother's wishes. The officers had previously removed the defendant from the home for similar disturbances. The jury also heard testimony that defendant was instructed that he was under arrest. Given the circumstances of this case, we find that the jury could have properly found, after viewing the evidence in the light most favorable to the prosecution, that defendant intentionally used force upon the police officers, without the consent of the officers, when he knew or should reasonably have known that the victim is a police officer acting within the performance of his duty.
Once the elements of La.Rev.Stat. 14:34.2 are satisfied, a defendant can defeat his conviction only by showing that the battery was justified and in defense of an unlawful arrest. Thus, the issue is whether the police had lawful grounds, or probable cause, to arrest the defendant. An individual in Louisiana has a timehonored right to resist an illegal arrest. City of Monroe v. Goldston, 95-0315 (La.9/29/96), 661 So.2d 428; White v. Morris, 345 So.2d 461, 465 (La.1977). However, that right is only available where the arrest is illegal and is tempered by the requirement that in preventing such illegal restraint of his liberty, he may use only "such force as may be necessary." City of Monroe v. Ducas, 203 La. 971, 14 So.2d 781, 784 (1943).
Here, the appellate court incorrectly reasoned that the police had no valid grounds to arrest defendant, which resulted in the further erroneous conclusion that defendant was justified in resisting an unlawful arrest. Nevertheless, the court of appeal considered if "probable cause for arresting him might have been supportable on some other ground." The court of appeal then examined La.Code Crim. Proc. art. 213 and concluded that the officers had "no reason to believe that the defendant had committed an offense, nor did he commit an offense in their presence after they arrived at the house."
The Third Circuit purportedly canvassed the Criminal Code to determine whether the police had probable cause to arrest defendant for any offense,[2] but neglected to properly consider a valid rehearing argument *644 made by the state in its rehearing application: that the police had probable cause for the arrest under La. Rev.Stat. 14:63.3(A),[3] which provides the owner of any immovable property with the authority to order anyone from the premises. The court of appeal neglected to address this applicable and determinative statute.
As this court has noted on several occasions, La.Rev.Stat. 14:63.3 prohibits entering or remaining in places or on land after being forbidden to do so, either orally or in writing. State in the Interest of J.A.V., 558 So.2d 214 (La.1990); State v. Johnson, 381 So.2d 498 (La.1980). The statute "requires a reasonably contemporaneous or written request to leave as an indispensable element of the offense." Id. In the instant case, both of these elements are unquestionably satisfied.
Further, the record clearly establishes that both Ms. Ceaser and the police officers made contemporaneous requests, and in fact made several such requests, for the defendant to leave the premises. When the defendant refused to do so, the officers had probable cause to arrest him on the basis of his violation of La.Rev.Stat. 14:63.3(A) and did so by verbally informing him that he was under arrest and attempting to secure him with handcuffs.
We further note that what the officers subjectively believed or testified that they believed when they placed the defendant under arrest is not necessarily relevant to the outcome of this case, as the lone dissenter would have this court find. Both State and Federal Constitutions require that "seizure" of person by law enforcement official be founded upon objective justification; when seizure takes the form of an arrest, the police officer must have probable cause to believe the person arrested has committed an offense. La. Const. Art. 1, § 5; U.S.C.A. Const. Amend. 4; La.Code Crim. Proc. art. 213; Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La. 1982); State v. Hathaway, 411 So.2d 1074 (La.1982). As this court has previously explained:
Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the accused has committed an offense. Probable cause to arrest is not absolute cause, and to determine its existence, courts must examine facts and circumstances within the arresting officer's knowledge in light of the experience of reasonable people, not legal technicians. (Citations omitted)
State v. Scales, 655 So.2d 1326 (La.1995). Furthermore, probable cause, and not absolute certainty, is the test to be applied in judging the validity of an arrest, and all possible lawful explanations of a situation need not be negated before making an arrest. State v. Winfrey, 359 So.2d 73 (La.1978); State v. Phillips, 347 So.2d 206 (La.1977).
In applying these principles to the case at hand, we find there was probable cause to arrest the defendant. Prior to placing the defendant under arrest, both *645 officers were informed by Ms. Ceaser that she wanted the defendant out of her home because he was causing a disturbance and fighting with Ms. Ceaser and his brother. On several occasions during the instant incident, the defendant did not comply with this mandate and finally refused to leave the home. The fact that the defendant remained on the premises after being ordered to leave and where he was forbidden to remain constituted an offense in progress. See Lewis at 1084. From the totality of these facts and circumstances the officers clearly had probable cause to arrest the defendant for several violations, including La.Rev.Stat. 14:63.3.
The evidence provides that Officer Noel and Sgt. Stagg had responded to previous reports from the home and had successfully defused the situations without any violence or cause for arrest. The officers were, therefore, familiar with the household and the problems caused by defendant within the household. On this occasion, the officers had used entirely reasonable measures involving the minimal force of grasping defendant's arm to escort him outside. The defendant resisted by wrenching his arm from the officer's grasp and announcing his resolve to remain on the premises against the wishes of the homeowner. In the process of attempting to make a lawful arrest by placing defendant in handcuffs to lead him outside, the officers sustained the blows inflicted by their own equipment wielded in defendant's hands in an unjustified use of force to resist the lawful arrest. Defendant was thus not justified in his use of violence to oppose the officers' performance of their official duties and the court of appeal erred in concluding otherwise. We further note that even if the arrest were not legal, the amount of force the defendant used exceeded that which was reasonably necessary to prevent the arrest. Therefore, the verdict of the trial court was correct.

CONCLUSION
The Third Circuit erred by reversing defendant's convictions for battery on a police officer. In this domestic dispute, which escalated into violence directed at the police, the police had probable cause to arrest defendant for remaining on the premises after being asked to leave. La. Rev.Stat. 14:63.3. The Third Circuit mistakenly reasoned that defendant was justified in resisting an arrest that was not grounded in probable cause. For the forgoing reasons, we find that the evidence clearly supports that the police officers had lawful grounds upon which to arrest the defendant. The evidence substantiates the defendant's conviction for two counts of battery of a police officer in violation of La.Rev.Stat. 14:34.2. Accordingly, we reinstate the jury's verdict against defendant, as well as the sentence imposed by the trial court.
KNOLL, J., dissents and assigns reasons.
KNOLL, Justice, dissenting.
I respectfully disagree with the majority's ruling that the Court of Appeal erred in reversing defendant's convictions for battery on a police officer, and dissent for the following reasons.
The Third Circuit held that the "police did not have probable cause to arrest [defendant] for resisting an officer and therefore, he had the right to resist the unlawful arrest." State v. Ceaser, 02-374, p. 2-3(La.App. 3 Cir. 10/2/02), 828 So.2d 680, 681. I agree.
At trial, Officer Noel testified that the reason why the defendant was placed under arrest was because "he'd started resisting us" by refusing to leave his home.
*646 Under Louisiana law, La. R.S. 14:108, in pertinent part, defines the offense of resisting an officer:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any so. lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
La.Rev.Stat. § 14:108(A) (2003). In the present case, the only way the defendant could have resisted the officers is if the two officers, Noel and Stagg, were acting under the authority of law in making an arrest. Stated simply, for resisting arrest, the officers first had to have probable cause to arrest the defendant, and most importantly, then placed the defendant under arrest for an offense before arresting him.
Based upon the testimony of the officers, the defendant did not resist arrest. Rather, the defendant refused to leave his home,[1] and the officers took his refusal to leave as resistance. Only after he refused to leave and pulled his arm away from the grasp of Sgt. Stagg was the defendant informed that he was under arrest: "Well, when I first tried to escort him, he jerked away....And I said, `Well, you're under arrest.'" (Testimony of Sgt. Stagg). As clearly seen in the record, the defendant was not under arrest when he resisted the officers' order for him to leave his home. Of critical importance is that the defendant was not resisting arrest because he had not been placed under arrest for an offense when he first refused to leave his home after the police officers ordered him to do or seizure of property or to serve any so.
Under the statutory provisions of La. R.S. 14:108, however, the majority argues that if the officers were acting in their official capacity, a fact which neither party contests in this case, and were authorized by law to make an arrest, then the defendant committed the crime of resisting an officer. To succeed in this argument, the majority needs to show that the officers, prior to the defendant's refusal to leave his home, had the authority under law to make an arrest, e.g., they had probable cause to arrest him for an offense.[2] Clearly, the record shows they did not.
The majority opinion fails to even address the issue of the defendant's knowledge, more specifically the resister's knowledge of his arrest or impending detention, which is the essential element of resisting arrest. Significantly, in State v. Gros, 216 La. 103, 43 So.2d 232, 233 (1949), this Court ruled that "scienter is an essential element of the offense of resisting an officer." Id. at 233. "Essential to a conviction under R.S. 14:108 is the defendant's knowledge of his arrest or impending detention." State v. Nix, 406 So.2d 1355, *647 1357 (La.1981); State v. Freeman, 411 So.2d 1068, 1071 (La.1982); State v. Hines, 465 So.2d 958, 962 (La.App. 2nd Cir.1985), writ denied, 467 So.2d 536 (La.1985). An arresting officer must inform the defendant of his intention to arrest. Nix, 406 So.2d at 1357.
In the Nix case, which involved facts stronger than the present case, this Court reversed a conviction for resisting arrest because of the failure to first place the defendant under arrest. In Nix, an officer went to a residence to investigate a report of a domestic disturbance. At the home, the officer found the defendant outside the backdoor speaking to the homeowner, who was inside. The homeowner explained in court that during the course of their discussion defendant lapsed into foul language and began accusing her of interfering in his marriage and causing his divorce. Also, it was revealed that the defendant had been placed under a peace bond to prevent his intrusion upon the household. In an effort to investigate the allegations, the officer told the defendant that the best thing for everyone involved was for the defendant to leave the residence and suggested that the defendant drive to the sheriff's office for questioning. The officer followed the defendant. Near the sheriff's office, the defendant accelerated and crossed the state line into Texas. The defendant was stopped in Texas by a Texas constable. When he returned to Louisiana a short while later, he was arrested and formally charged with disturbing the peace and resisting arrest. Nix, 406 So.2d at 1356-57.
At trial, the officer testified that defendant was not placed under arrest until he returned to Louisiana after fleeing the state. Given the officer's testimony and the statute's requirement that an officer convey to the defendant his intention to arrest, this Court found that not only had the officer not informed defendant of his intention to arrest, but the officer expressly stated that the defendant had not been arrested. This Court reversed defendant's conviction of resisting an officer. Nix, 406 So.2d at 1357.
In the present case, as in the Nix case, the officers testified that the defendant was not arrested until he resisted Sgt. Stagg's order to leave, nor was the defendant informed of the officers' intention to arrest until he resisted. Even though the majority attempts to find that the officers had probable cause, the majority is not able to satisfy this essential element of resisting an officer because the defendant was not under arrest, nor was the defendant informed of the officers' intention to arrest him prior to his resisting the officers. Since the resistance preceded the arrest and the conveyance of the intention to arrest, the officers had no authority to arrest the defendant for the offense of resisting an officer.
The defendant's refusal to comply with the officers' order was the reason why the officers arrested him. Importantly, before the defendant first resisted the officers, the record shows there is absolutely no probable cause to support an arrest for any crime. Without probable cause for an offense, the arrest for resisting an officer in this case is rendered unlawful. State v. Lindsay, 388 So.2d 781 (La.1980).[3] A citizen has the right to resist an unlawful arrest and may use such force as may be *648 necessary. White v. Morris, 345 So.2d 461, 466 (La.1977).[4]
Moreover, in the State's failure to show the existence of probable cause to support an arrest, remarkably the State changed its mind as to the underlying offense for arrest, and in its rehearing application in the Court of Appeal for the first time informed defendant he was being arrested for a violation of La. R.S. 14:63.3.[5] Still remarkably, this statute is not at all responsive as to why the police were called by the defendant's mother and is totally out of sync with the facts of this case. This statute was first enacted in 1960 in response to racial "sit-in demonstrations"[6] and later amended in 1978 to assist sportsmen with leased properties.[7] This absurd maneuver by the State clearly demonstrates the weaknesses of the State's case, and more importantly, clearly deprives the defendant of his fundamental constitutional right to present a defense. La. Const. art. 1, § 16.[8] This unconstitutional tactic by *649 the State, which the majority sanctions, sets a dangerous precedent and renders criminal pre-trial discovery motions meaningless if allowed to stand.
In the present case, the defendant was originally charged and booked with: (1) disturbing the peace; (2) criminal damage to property; (3) resisting an officer; (4) attempted disarming of a police officer: (5) aggravated battery; and (6) aggravated second-degree battery. At arraignment, the State formally charged the defendant with two counts of battery on a police officer. Of the seven crimes for which the defendant was at one time charged, none of them fall within the provisions of La. R.S. 14:63.3, defining the offense of Entry on or Remaining in Places or on Land After Being Forbidden.[9]
The State and the majority, in attempting to argue the application of La. R.S. 14:63.3 as a justification for finding probable cause to arrest defendant when the defendant was arrested, are essentially denying this defendant his constitutional right to present a defense and to be informed of the nature and the cause of the accusations against him. This is nothing more than a search by the State for probable cause to justify an unlawful arrest of the defendant for engaging in a verbal non-assaultive argument with his brother. Finding that the police in this case had probable cause to arrest the defendant for an offense at the moment the arrest took place would yield this absurd and unconstitutional result, and it is for these reasons that I do not find that the statutory provisions relied upon by the majority apply in this case.
NOTES
[1] Defendant signed his name "Chanse Ceaser" on several documents in this record. His surname is also alternatively spelled "Ceasar" in the record.
[2] While we do not find error in the court of appeal's summary rejection of the applicability of La.Rev.Stat. 14:103, relative to disturbing the peace, to the instant intra-family argument, we do not necessarily agree with remainder of the court's determinations but pretermit discussion of the applicability of the Protection from Family Violence Act, La. Rev.Stat. 46:2140, as we find the state succeeds on other grounds.
[3] La.Rev.Stat. 14:63.3(A), provides, in pertinent part:

No person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any structure, ... or immovable property, which belongs to another ... after having been forbidden to do so, either orally or in writing ... by any owner, lessee, or custodian of the property or by any other authorized person.
[1] Ms. Ceaser, the defendant's mother, explained at trial that she and the defendant lived in the home together. Also, Ms. Ceaser testified that she did believe that the house was the defendant's residence. Ms. Ceaser testified at trial that when the defendant was living with her part of his income did go towards paying the bills of the house. The house, it was revealed at trial, is being purchased by Ms. Ceaser. Ms. Ceaser pays monthly notes in the amount of $248. When questioned as to her sources of income, Ms. Ceaser stated that she was a student at LSUE in Eunice, Louisiana, and listed her disability check and the defendant's disability check as her income.
[2] In the absence of a warrant, the issue of a lawful arrest hinges on the finding of probable cause. La.Code Crim. Proc. art. 213 (2003); State v. Raheem, 464 So.2d 293, 296 (La.1985).
[3] Lewis, 386 So.2d at 1086; City of New Orleans v. Lyons, 342 So.2d 196 (La.1977); State v. Lopez, 256 La. 108, 235 So.2d 394 (1970); City of Monroe v. Ducas, 203 La. 971, 14 So.2d 781 (1943); Joseph, 759 So.2d at 140; Green, 706 So.2d at 537; McCoy, 546 So.2d at 244; Siggers, 490 So.2d at 721.
[4] Lindsay, 388 So.2d at 782; Lewis, 386 So.2d at 1083; Lyons, 342 So.2d at 199; Ducas, 14 So.2d at 784; State v. Daigle, 95-1260 (La.App. 3 Cir. 6/11/97), 701 So.2d 685, 688.
[5] La. R.S. 14:63.3(A) provides:

No person shall without authority go into or upon or remain in or upon or attempt to go into or upon or remain in or upon any structure, watercraft, or any other movable, or immovable property, which belongs to another, including public buildings and structures, ferries, and bridges, or any part, portion, or area thereof, after having been forbidden to do so, either orally or in writing, including by means of any sign hereinafter described, by any owner, lessee, or custodian of the property or by any other authorized person. For the purposes of this Section, the above mentioned sign means a sign or signs posted on or in the structure, watercraft, or any other movable, or immovable property, including public buildings and structures, ferries and bridges, or part, portion or area thereof, at a place or places where such sign or signs may be reasonably expected to be seen.
La.Rev.Stat. § 14:63.3(A) (2003).
[6] First enacted by 1960 La. Acts 78, § 1, La. R.S. 14:63.3 was a product of a record-breaking output of legislation, including the passage of 35 acts and the proposal of four constitutional amendments, "apparently spurred by impending integration of the public schools in Orleans Parish and a rash of socalled `sit-in' demonstrations." Donald H. Wollett, Legislative SymposiumRace Relations, 21 LA. L.REV. 87, 85 (1960-1961). Although "many of these acts do not purport, on their face, to deal with segregation or any other aspect of race relations as such .... [i]t seems likely, however, on the basis of the facts set forth in legislative debates, discussions, and comments, that in operation they will affect primarily the Negro population of the state." Wollett, supra at 85, n. 1. Resulting from the "efforts of the legislature, sitting in special session, to block the implementation of Brown v. Board of Education," La. R.S. 14:63.3 "made participation in so-called `sitin' demonstrations a very hazardous business." Wollett, supra at 92-93.
[7] The provision of the statute regarding immovable property was added by an amendment to the statute in 1978. See 1978 La. Acts 694, § 1. Minutes from the May 18, 1978 meeting of the House Committee on Administration of Criminal Justice stated:

[T]he R.S. 14:63.3 as it is presently written penalized the entry or remaining upon "any structure, watercraft, or any other movable, including public buildings and structures, ferries, and bridges after being forbidden." The proposed statute expands the scope of places covered to include "any structure, watercraft, or any other movable or immovable property." Mr. Guidry explained that the state statute on criminal trespass is weak and his bill is an effort to strengthen this law. Upon questioning by Mr. Kimball, Mr. Guidry advised this bill was to assist sportsmen and their organizations to gain and keep control of leased property.
[8] A defendant has a constitutional right to "be informed of the nature and cause of the accusations against him." La. Const. art. 1, § 13; State v. Brown, 26,651 (La.App. 2 Cir. 3/1/95), 651 So.2d 929, 932, writ denied, 95-1147 (La.9/29/95), 660 So.2d 855. This constitutional requirement that a defendant be informed of the nature and cause of the accusations against him serves to protect the defendant's right to prepare a defense and to exercise fully his rights of confrontation and cross-examination. State v. Johnson, 93-0394 (La.6/3/94), 637 So.2d 1033, 1034-35. The State, therefore, is required to inform the defendant in sufficient particularity of the nature and cause of the accusations against him "so that he is able to prepare for trial, to allow the court to determine the admissibility of the evidence, and to afford the defendant protection from subsequent prosecution for the same offense." State v. Marcal, 388 So.2d 656, 659 (La.1980), cert. denied, 451 U.S. 977, 101 S.Ct. 2300, 68 L.Ed.2d 834 (1981), reh'g denied, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). All essential facts necessary to describe the nature and cause of the offense must be incorporated in the initial criminal charge against the defendant, whether brought by indictment or information. Gros, 43 So.2d at 233; State v. Toney, 205 La. 451, 17 So.2d 624, 625 (1944); Schleve, 775 So.2d at 1187.
[9] La.Rev.Stat. §§ 46:2121-2142 (2003).