11 Judge MICHAEL E. KIRBY.

STATEMENT OF CASE

Defendant was charged by bill of information with possession of cocaine. He pled not guilty at arraignment. A hearing on defendant’s motion to suppress the evidence was held on August 23, 2001. The trial court denied the motion. The same day, defendant withdrew his former plea of not guilty and pled guilty as charged under State v. Crosby, 338 So.2d 584 (La.1976). The trial court ordered a pre-sen-tence investigation be completed, and on December 11, 2001, defendant was sentenced to five years at hard labor suspended and placed on five years active probation. The court then granted his motion for appeal.

STATEMENT OF FACT

Officer Jayson Germann testified that on the night April 30, 2001, he and his partner, Officer Alan Arcana, were on patrol in *1015 an area of the Seventh Police District that had been documented for an increase in crime, mainly residence burglaries. Officer Germann testified that it was believed that the burglaries were due to narcotic activity in the area that was also documented. The officer testified that it was believed that possibly juveniles were breaking into the residences.
| gOfficer Germann testified that they observed the defendant walking on Avalon Street. As the officers approached, the subject turned and looked at the officers. Officer Germann testified that the defendant was acting nervous and that he believed he was possibly a curfew violator. He stated that as they drove closer, the defendant became more nervous. Officer Germann testified that based on his experience the defendant looked very young to him.
Officer Germann testified that at this point he elected to stop the defendant to ensure that he was not a curfew violator. Officer Germann testified that he believed the defendant was acting nervous because “he thought it was curfew and he was gonna (sic) go to the curfew center.”
Officer Germann testified that he got the defendant’s identification and realized that the defendant was not a juvenile; however, at this point the defendant became even more nervous. The officer testified that he could not understand why the defendant became even more nervous and that for his safety he decided to pat him down for weapons. He asked the defendant to place his hands on the car and he began to feel for weapons. He stated that he touched his pocket and felt what he believed to be a pack of cigarettes. The defendant “became spooked” at this time and in an effort to get away swung his elbow around and struck the officer in the chest. The two struggled and Officer Arcana, who had been in the vehicle, came around and assisted his partner. A brief struggle ensued, and after the defendant was asked to stop resisting, he complied. The defendant was arrested at this point for battery on a police officer, and in a search incident to arrest, Officer Germann retrieved the cigarette pack and found that it contained several rocks of cocaine wrapped in cellophane.

JASSIGNMENT OF ERROR NUMBER 1

Defendant contends the trial court erred in denying the motion to suppress the evidence. He contends that Officer Germann unlawfully interfered with the defendant’s right to be left alone and that the defendant had every right to resist an unlawful arrest.[1]
The Louisiana Code of Criminal Procedure article 215.1(A) provides that:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an *1016 offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
While “reasonable suspicion” is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. In reviewing the totality of the circumstances, the officer’s past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1232. The court must also weigh the circumstances known to the police not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. State v. Huntley, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049.
Flight from police officers alone will not provide justification for a stop. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. However, flight from police officers is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion to stop. State v. Fortier, 99-0244, p. 7, (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 459, citing Benjamin.
At the hearing, defense counsel only argued that the decision to stop a suspect on the basis of a curfew violation is too subjective. He noted that the defendant was eighteen at the time of the arrest. The trial court found that the officer did not abuse his discretion when he decided to stop the defendant and noted that the defendant was obviously young.
Defendant cites no cases in support of his argument that the trial court erred in denying the motion to suppress but notes that “even though the officer couldn’t recall what time it was, he nonetheless decided to stop the appellant because he ‘might’ be a curfew violator.... ” The testimony reflects that although the officer could not recall the exact time he testified that it was past curfew time. Furthermore, the record reflects that defense counsel had received a copy of the police report and that during argument he made reference to the defendant being l5out at eleven o’clock. Accordingly, there is an insufficient basis to contend that the stop was not justified because of the hour of night.
Defendant further implicitly questions the constitutionality of Officer Germann’s decision to pat the defendant down for weapons in contending that he had a right to resist the arrest after being placed against the car.
In order to justify a brief frisk for weapons during the course of an investigatory stop, a police officer need not be absolutely certain that the individual is armed. The issue is whether or not a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. In determining whether or not the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized *1017 suspicion or “hunch,” but to specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
State v. Lightfoot, 580 So.2d 702, 705 (La.App. 4 Cir.1991).
In State v. Bourgeois, 609 So.2d 1003 (La.App. 5th Cir.1992), a case with similar facts as those present here, officers were patrolling an apartment complex known to be a high-crime area in response to a request from the complex manager. A 9:00 P.M. curfew had been imposed and the police were asked to remove people who were not tenants or who could not state a reason for being there. The officers observed four men standing together in the parking lot of the apartment complex. As the officer’s approached “two of the men turned away from the police, removed their hands from their pockets, put their hands back into their pockets, and then turned back to face the police.” Id. The officer testified that this particular behavior indicated that someone was trying to discard something; however, he did not suspect any particular criminal activity, such as an auto burglary, was taking | fiplace. The men were ordered to spread themselves on the cars to be searched. Two crack pipes were recovered from the defendant’s pocket.
The court found that while the officers may have had reasonable cause to stop and question the men, the facts were insufficient to establish reasonable cause to frisk them stating that the officer “did not testify that he ‘reasonably suspect[ed] he [was] in danger’, which is the statutory justification for a frisk.” 609 So.2d at 1004.
By contrast, in State v. Gray, 99-47 (La.App. 5 Cir. 6/1/99), 738 So.2d 668, the defendant was among four males who were stopped by the police for a suspected curfew violation. When the reporting officer, who was alone late at night, approached the men, one of them ran into an adjacent apartment. The officer ordered the remaining men to approach his vehicle; however, the defendant refused to approach the vehicle or to remove his hands from his pockets as the officer requested. The officer was forced to personally escort the defendant to the vehicle and to continually ask the defendant to remove his hands from his pockets. The officer placed the defendant in handcuffs, and conducted a weapons search. The court concluded that under the circumstances, a reasonably prudent person would have been warranted in believing that his safety was in danger and upheld the search.
In the present circumstance, Officer Germann testified as follows concerning his decision to do a pat down of the defendant:
Originally, like I said, when we stopped him and learned he was nervous, we come across a lot of people who are nervous when they’re stopped by the police and this is the natural behavior, and sometimes — you know, like I said, I believed he was nervous because of the fact that he^ — I thought he was a juvenile and he didn’t want to go to the curfew center but once I realized he wasn’t a | .¿juvenile and he was still nervous and I couldn’t understand why he was so nervous, I went ahead and conducted a pat down for officer’s safety to ensure that me and my partner weren’t gonna (sic) get injured in any sort of way.
By Officer Germann’s own testimony, he did not suspect the defendant of any other crime other than a curfew violation. The only reason provided by Officer Ger-mann to believe the defendant was armed was that he continued to be nervous after the fact that he was not in violation of the curfew ordinance had been established. At this point, the officer began to complete *1018 a field interview card and to determine whether the defendant was wanted. Officer Germann stated that in his experience it was perfectly normal for someone who had been stopped by the police to be nervous. Essentially, the only justification provided for Officer Germann’s belief that the defendant was armed was that he continued to be nervous or become more nervous while the officers were preparing the field interview card and checking to see if he was wanted. Given that in Officer Ger-mann’s experience, the defendant’s behavior was essentially normal, he would be justified in patting down nearly every individual stopped on the basis of a nervous disposition. The law requires more. The testimony fails to establish articulable facts that create a reasonable suspicion that danger existed, and it does not reflect anything more than an “inchoate and un-particularized suspicion or ‘hunch,’ that the defendant was armed.” Lightfoot, supra.

CONCLUSION

We reverse the trial court’s denial of the motion to suppress the evidence, vacate the conviction and sentence, and remand.
REVERSED AND REMANDED

. "Louisiana has long held to the rule of law that a citizen has the right to resist an unlawful arrest. State v. Lindsay, 388 So.2d 781 (La.1980); City of New Orleans v. Lyons, 342 So.2d 196 (La.1977). In this state, the right to resist an unlawful arrest is even considered statutory as it has been codified in LSA-R.S. 14:108 and LSA-C.Cr.P. art. 220. Id. This court proclaimed Louisiana’s attitude on the right to resist an unlawful arrest in City of Monroe v. Ducas, 203 La. 971, 14 So.2d 781, 784 (1943), stating that:
The right of personal liberty is one of the fundamental rights guaranteed to every citizen, and any unlawful interference with it may be resisted. Every person has the right to resist an unlawful arrest; and, in preventing such illegal restraint of his liberty, he may use such force as is necessary.”
State v. Stowe, 93-2020, pp. 4-5 (La.1994), 635 So.2d 168, 176.