851 So.2d 1039 (2003)
STATE of Louisiana
v.
Jeremy SIMS.
No. 2002-K-2208.
Supreme Court of Louisiana.
June 27, 2003.
Rehearing Denied September 5, 2003.
*1040 Hon. Richard P. Ieyoub, Attorney General, Hon. Eddie J. Jordan, Jr., District *1041 Attorney, Anne M. Dickerson, Julie C. Tizzard, Valentin M. Solino, Counsel for Applicant.
Laura M. Pavy, Opelousas, Counsel for Respondent.
CALOGERO, Chief Justice.
Police officers conducted an investigatory stop-and-frisk of defendant to determine whether he was a minor on the streets at night in violation of a curfew ordinance. As he was being frisked, defendant became frightened and, in an effort to escape, struck one of the officers. Defendant was thereupon arrested for battery on a police officer. In a search incident to that arrest, the officers discovered several rocks of cocaine inside of a cigarette pack in defendant's pocket. The district court denied defendant's motion to suppress the evidence and convicted defendant of possession of cocaine. The court of appeal reversed the conviction on the ground that the frisk of defendant was unlawful and, under the long-standing Louisiana rule, defendant had the right to resist an unlawful arrest.
We reverse the judgment of the court of appeal. Although we agree that the officers lacked reasonable suspicion to conduct a protective frisk of defendant, we hold that the officers lawfully arrested defendant for battery on a police officer because an individual has no right to resist an unlawful stop-and-frisk.

FACTS AND PROCEDURAL HISTORY
On the evening of April 30, 2001, two New Orleans police officers, Officer Jayson Germann and Officer Alan Arcana, were patrolling an area of eastern New Orleans that had been documented for an increase in residence burglaries. Officer Germann testified that he believed "juveniles were breaking into the residences" because of "narcotic activity in the area." While on patrol, the officers observed defendant, Jeremy Sims, walking on Avalon Street. As the officers approached, defendant turned and looked at them. Officer Germann testified that defendant was acting nervously, and that he became more nervous as the officers drove closer to him. The officers believed defendant was possibly a curfew violator because he seemed to be very young. At this point, the officers decided to stop defendant and investigate the possible curfew violation.
After securing defendant's identification, Officer Germann realized that defendant was not a juvenile. However, even after his age was discovered, Officer Germann testified, defendant became even more nervous. To ensure the officers' safety, he decided to conduct a protective frisk for weapons. As Officer Germann began the pat down for weapons, he felt what he believed to be a pack of cigarettes. At this time defendant became frightened and, in an effort to get away, swung his elbow around and struck the officer in the chest. As the two struggled, Officer Arcana got out of the police vehicle and assisted his partner. A brief struggle ensued before defendant complied with the officers' orders to stop resisting. The two officers then arrested defendant for battery on a police officer, a violation of La.Rev.Stat. 14:34.2. In a search incident to the arrest, Officer German removed the cigarette pack from defendant's pocket and found that it contained several rocks of cocaine.
Defendant pled not guilty to the charge of possession of cocaine and filed a motion to suppress the evidence. At the hearing, defense counsel argued only that the decision to conduct an investigatory stop on the basis of a possible curfew violation alone is too subjective.[1] The district judge denied the motion to suppress, finding that the officers did not abuse their discretion *1042 when they decided to stop defendant to investigate a possible curfew violation because, based on the officers' experience, defendant seemed very young. Defendant then withdrew his plea of not guilty and pled guilty as charged, reserving his right to appeal the adverse ruling on his motion to suppress.[2] The district court judge sentenced defendant to five years at hard labor, suspended, and placed defendant on active probation for five years.
The court of appeal reversed defendant's conviction and sentence. State v. Sims, 02-0479, p. 7 (La.App. 4th Cir.7/17/02), 823 So.2d 1013, 1018. Although, the court of appeal reasoned, the officers had sufficient basis to conduct an investigatory stop of defendant based on the lateness of the hour and defendant's youthful appearance,[3] the facts were insufficient to establish the officers' right to conduct a frisk of defendant's outer clothing for weapons. Recognizing that to conduct a protective frisk in conjunction with an investigatory stop, police officers must provide articulable facts that create a reasonable suspicion that danger existed, the court noted that Officer Germann's own testimony established that he did not suspect defendant of any crime other than a curfew violation. The only reason Officer Germann gave to justify his belief that defendant was armed was that defendant remained nervous even after he satisfied the officers that he was not a juvenile.
The court of appeal found that the testimony did not reflect anything more than the officers'"inchoate and unparticularized suspicion or `hunch' that the defendant was armed." Id. The court, therefore, held that the officers' frisk of defendant was unlawful, and, furthermore, the officers had no right to arrest defendant for battery on a police officer because a defendant in Louisiana has the right to resist an unlawful arrest. Citing State v. Lindsay, 388 So.2d 781 (La.1980), and City of New Orleans v. Lyons, 342 So.2d 196 (La. 1977).
We granted the state's application to examine whether the officers' stop and subsequent protective frisk of defendant were lawful where defendant continued to display nervousness in his interaction with the officers, even after it was established that he was not a curfew violator. Equally important, however, we granted the writ application to examine the long-standing law of this state that an individual has the right to resist forcefully an unlawful arrest, and to examine that law's applicability to this case. We find that the court of appeal erroneously overturned defendant's conviction and sentence. Although the police officers did not possess reasonable suspicion of danger to justify the protective frisk of defendant, defendant did not have the corresponding right to resist this unlawful frisk forcefully by committing a battery on the investigating officer. In other words, we hold today that the statutory and jurisprudential right to resist an unlawful arrest does not grant an individual a similar right to resist an unlawful stop-and-frisk.

LAW AND ANALYSIS
As a preliminary matter, we agree with the court of appeal that the officers had the right to detain defendant *1043 to determine whether he was a curfew violator. While an arrest requires officers to have probable cause to believe that a suspect has committed a crime, see U.S. Const. amend. IV and La. Const. art. I, § 5, an investigatory stop requires a lesser standard of "reasonable suspicion." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In Louisiana, the investigatory "Terry "stop is codified in La. Code Crim. Proc. art. 215.1(A): "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." Like an arrest, an investigatory stop entails a complete restriction of movement, although for a shorter period of time. State v. Bailey, 410 So.2d 1123, 1125 (La.1982).
In making a brief investigatory stop, the police "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). Specifically, our courts have interpreted article 215.1 to require that an officer point to specific and articulable facts to justify an investigatory stop. State v. Huntley, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049.
In this case, the officers were patrolling an area that had recently seen an increased amount of residence burglaries, which, the officers suspected, were being committed in large part by juveniles. At the time the officers observed defendant, it was past curfew, and, according to the officers, defendant looked very young. Because defendant was only eighteen years old at the time of the stop, the officers' suspicion regarding a possible curfew violation was not unreasonable. Additionally, Officer Germann stated that defendant became nervous when he saw the police officers. See State v. Williams, 421 So.2d 874 (La.1982) (While nervousness or startled behavior at the sight of a police officer is not in and of itself enough to constitute reasonable suspicion, it is a factor to consider.). The officers therefore articulated the specific facts that, based on their experience, led them to conclude defendant could possibly be a curfew violator. Consequently, the investigatory stop was lawful under article 215.1.
Although the initial investigatory stop of defendant was proper, we cannot say that Officer Germann was justified in conducting a protective frisk of defendant. An officer's right to conduct a protective frisk is codified in La.Code Crim. Proc. art. 215.1(B), which provides that "[w]hen a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon." While it is true that an officer is never justified in conducting a pat-down for weapons unless the original investigatory stop itself was justified, a lawful detention for questioning does not automatically give the officer authority to conduct a pat-down for weapons. State v. Hunter, 375 So.2d 99, 101 (La.1979). Even after a lawful investigatory stop, a police officer may frisk the suspect only where a reasonably prudent person would be warranted in the belief that his safety or that of others is in danger. La.Code Crim. Proc. art. 215.1(B); Terry, 392 U.S. at 21, 88 S.Ct. at 1880. Therefore, the reasonableness of a frisk is governed by an objective standard. State v. Dumas, 00-0862, pp. 2-3 (La.5/04/01), 786 So.2d 80, 81.
The officer's suspicion that he is in danger is not reasonable unless the officer can point to particular facts which *1044 led him to believe that the individual was armed and dangerous. Hunter, 375 So.2d at 101. The officer need not establish that it was more probable than not that the detained individual was armed and dangerous. Rather, it is sufficient that the officer establish a "substantial possibility" of danger. Id. at 102. In determining the lawfulness of an officer's frisk of a suspect, courts must give due weight, not to an officer's "inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 21, 88 S.Ct. at 1880.
Officer Germann testified as follows concerning his decision to frisk defendant:
Originally, like I said, when we stopped him and learned he was nervous, we come across a lot of people who are nervous when they're stopped by the police and this is the natural behavior, and sometimesyou know, like I said, I believed he was nervous because of the fact that heI thought he was a juvenile and he didn't want to go to the curfew center but once I realized he wasn't a juvenile and he was still nervous and I couldn't understand why he was so nervous, I went ahead and conducted a pat down for officer's safety to ensure that me and my partner weren't gonna [sic] get injured in any sort of way.
Officer Germann's own testimony establishes that the officers did not suspect defendant of any crime other than a curfew violation, a non-violent offense. The only reason Officer Germann gave for his belief that defendant might be armed and dangerous was that defendant continued to display nervousness after the officers ascertained that he was not in violation of the curfew ordinance. No court of this state has concluded that nervousness, absent additional aggravating factors, can form the basis for an officer's protective frisk search for weapons.
For example, in Hunter, 375 So.2d at 101, officers encountered the defendant alone in the rear of an automobile parked in a residential neighborhood. Although there was reason to suspect the defendant of illegally entering the automobile, there was no indication that he was or had been involved in the commission of a violent crime. Id. This court noted that there were no bulges in the defendant's clothing or other signs that he was armed, and, although he was nervous, he made no movement which could reasonably have been interpreted as an effort to produce a weapon. Id. While the defendant patted the breast pocket of his coat (which could arguably be construed as an attempt to reach a weapon), the officer who conducted the frisk did not indicate that this action precipitated the frisk. Id.[4] This court found that the officers failed to articulate any particular facts from which it could be reasonably inferred that the defendant was armed and dangerous; therefore, we found the protective frisk of the defendant in Hunter to be unlawful.
Additionally, in State v. Purvis, 96-787 (La.App. 3d Cir.12/11/96), 684 So.2d 567, officers decided to conduct a frisk of the defendant's companion because he was "highly nervous," sweating, and staring at them. Id. at 571. The court suppressed the contraband discovered during the frisk, reasoning that the officers failed to articulate facts other than the companion's nervous behavior to support the reasonable suspicion that he was engaged in criminal activity. Id. (citing State v. Cormier, *1045 94-537 (La.App. 3d Cir.11/2/94), 649 So.2d 528).
In this case, although the neighborhood in which Officers Germann and Arcana encountered defendant had seen an increase in residence burglaries, any high crime character of the area was not a factor Officer Germann cited to support his belief that defendant could have been armed and dangerous. Rather, defendant's continued nervousness was the sole reason Officer Germann decided to conduct a frisk for weapons. The officer himself testified, however, that nervousness is a natural reaction of a citizen stopped by the police. As the court of appeal below correctly held, the law requires more. Whether Officer Germann subjectively believed that he was in danger is irrelevant because we are not prepared to find that this belief was reasonable. See Dumas, 00-862, pp. 2-3, 786 So.2d at 82. The officers in this case did not see a bulge in defendant's clothing indicating a weapon; defendant did not make any furtive gestures or place his hands in his pockets. The officers did not state that defendant appeared to be under the influence of alcohol or drugs, and defendant did not attempt to elude the officers at any time before the stop-and-frisk.
Courts must give deference to the training and experience of police officers in determining which suspects might prove to be a danger to themselves or others. However, allowing police officers to conduct a protective frisk based on anything less than specific and articulable facts illustrating their reasonable belief that danger existed "would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches." Terry, 392 U.S. at 21, 88 S.Ct. at 1880. Officer Germann's testimony established that he had no more than a "hunch" that defendant could have been armed, based on the fact that defendant remained nervous. In fact, given that in Officer Germann's experience defendant's nervous behavior was essentially normal, officers would be justified in patting down nearly every individual stopped on the basis of a nervous disposition. Accordingly, the court of appeal correctly held that the protective frisk of defendant was an unlawful search in violation of the Fourth Amendment.
The court of appeal's conclusion is meaningless, however, unless defendant's resistance to the improper frisk was justified under Louisiana's well-established doctrine that an individual may lawfully resist an unlawful arrest. See, e.g., City of Monroe v. Ducas, 203 La. 971, 14 So.2d 781, 784 (1943). This long-standing common law rule is reflected in both the Louisiana Criminal Code and the Louisiana Code of Criminal Procedure.[5] While a person "shall submit peacefully to a lawful arrest" pursuant to La.Code Crim. Proc. art. 220, if no probable cause exists for an arrest, an individual has the right to use "such force as is necessary" to resist an unlawful arrest. Ducas, 14 So.2d at 784; State v. Lindsay, 388 So.2d 781, 782 (La. 1980); City of Monroe v. Goldston, 95-0315, p. 4 (La.9/29/95), 661 So.2d 428, 430.
Although at one time most states adhered to the rule that a private citizen has the right to resist an unlawful arrest, the modern trend has been to limit the privilege. *1046 State v. Wiegmann, 350 Md. 585, 714 A.2d 841, 849 (1998). For example, this court has refused to extend the doctrine to an individual resisting an arrest for violation of a law that is subsequently declared unconstitutional. See Lyons, 342 So.2d at 200. Nonetheless, as this court noted in White v. Morris, 345 So.2d 461, 466 (La.1977), attempts made in the legislature in 1969 and 1975 to abolish the right to resist an unlawful arrest proved unsuccessful. Although the doctrine continues to be a part of Louisiana law, no court of this state has addressed its applicability to an unlawful investigatory stop and subsequent "pat down" for weapons.
To begin, La.Rev.Stat. 14:108 and La. Code Crim. Proc. art. 220 make it a crime to resist lawful arrests only, and do not address temporary detentions. The legislature enacted La.Rev.Stat. 14:108 and La. Code Crim. Proc. art. 220 before the Supreme Court in Terry v. Ohio upheld the constitutionality of the temporary stop and protective frisk, and, consequently, before Louisiana enacted its own stop-and-frisk statute, La.Code Crim. Proc. art. 215.1, in 1968.[6] Therefore, in addition to being absent from the text of the pertinent statutes, the right to resist a temporary stop-and-frisk could not have been envisioned by the legislature when it imposed on the citizens of this state the duty to submit peacefully to lawful arrest.
As we stated previously, the temporary stop-and-frisk under article 215.1 is similar to an arrest, as it entails a complete restriction of a defendant's movement. Bailey, 410 So.2d at 1125 (La.1982). The stop-and-frisk differs from a full-blown arrest, however, in many crucial respects, and it is these differences which prompt our holding that an individual does not have the right to resist an unlawful stop-and-frisk. A stop-and-frisk conducted pursuant to article 215.1 is a lesser intrusion on one's personal liberty than an arrest. "An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows." Terry, 392 U.S. at 26, 88 S.Ct. at 1882. Compared to an arrest, a stop-and-frisk is a relatively brief encounter with police officers. See State v. Young, 02-1073, p. 5 (La.App. 4th Cir.6/4/02), 820 So.2d 1182, 1186. Additionally, unlike the thorough and intrusive search conducted incident to an actual arrest, the Terry frisk is limited to a more superficial pat-down of a suspect's outer clothing for the purpose of detecting weapons only. See La.Rev.Stat. 215.1. While police and court records permanently document the event of an arrest, a stop-and-frisk is an informal encounter that is generally not the subject of any public record. Virginia v. Hill, 264 Va. 541, 570 S.E.2d 805, 808 (2002).
Perhaps most importantly, the sole purpose of the limited protective frisk is to prevent harm to police officers. State v. Wade, 390 So.2d 1309, 1312 (La.1980). Extending the rule that a citizen may resist an unlawful arrest to an unlawful stop-and-frisk would belie the paramount purpose of ensuring officer safety by encouraging the use of force on police officers. Law enforcement officials are called upon in the field to make split-second decisions regarding their own safety, and whether the officer did, in hindsight, possess articulable suspicion to justify the frisk should *1047 be resolved in the courtroom rather than in the streets. See Maryland v. Blackman, 94 Md.App. 284, 617 A.2d 619, 630 (1992).
The courts of other states which continue to recognize a citizen's right to resist forcefully an unlawful arrest have arrived at similar conclusions. In Maryland v. Barnhard, 86 Md.App. 518, 587 A.2d 561, 566 (1991), aff'd, 325 Md. 602, 602 A.2d 701 (1992), the court declined to recognize the right to resist an unlawful Terry stop as an extension of the right to resist unlawful arrest. The Barnhard court recognized that a contrary rule would subject police officers to attack in every instance when, during the course of their investigation, they temporarily detain someone. Id. Another court, albeit in dicta, applied the Barnhard holding regarding Terry stops to the case of an illegal Terry frisk. See Blackman, 617 A.2d at 630.[7] The Blackman court, citing the modern trend away from violent self-help, gave deference to the state's position that a citizen is permitted to use force to prevent an unlawful arrest, but declined to extend the rule to a frisk. Id. The Supreme Court of Virginia also recently concluded that the common law right to use reasonable force to resist an unlawful arrest did not confer a similar right to resist an unlawful detention or "pat-down" search. Hill, 570 S.E.2d at 808. The Hill court surmised that, because a detention is a "brief intrusion on an individual's liberty," the provocation resulting from an illegal detention is far less significant than the provocation that attends an illegal arrest. Id.
Based on the language of the statutes and jurisprudence restricting the right of resistance to an actual unlawful arrest, the aforementioned policy considerations supporting Terry stop-and-frisks, namely ensuring officer safety and discouraging violence on the streets, and the original intent of the legislature in passing these pre-Terry statutes, we decline to recognize the right to resist an unlawful stop-and-frisk in Louisiana. The policy considerations underlying the right to resist arrest, including the complete deprivation of liberty and the more extensive duration of an arrest than of a detention, do not raise corresponding concerns in the context of a temporary detention and protective frisk. Unlawful detention must therefore rise to the level of arrest to justify forceful resistance.

CONCLUSION
Although the police officers did not articulate sufficient facts to justify their frisk of defendant for weapons in conjunction with the investigatory Terry stop, the officers had the right to arrest defendant when he committed a battery upon them in an attempt to resist the unlawful frisk. There is no right to resist an unlawful stop-and-frisk under the long-standing rule permitting a citizen to resist an unlawful arrest. Accordingly, the officers lawfully arrested defendant for battery on a police officer, and the district court properly admitted the contraband recovered during the search incident to that arrest.

DECREE
COURT OF APPEAL REVERSED; CONVICTION AND SENTENCE REINSTATED; REMANDED TO DISTRICT COURT.
JOHNSON, J., dissents and assigns reasons.
*1048 JOHNSON, Justice, dissenting.
Officer Germann stated that in his experience it was perfectly normal for someone who had been stopped by the police to be nervous. Essentially, the only justification provided for Officer Germann's belief that the defendant was armed was that he continued to be nervous or become more nervous while the officers were preparing the field interview card and checking to see if he was wanted. Given that in Officer Germann's experience, the defendant's behavior was essentially normal, he would be justified in patting down nearly every individual stopped on the basis of a nervous disposition.
As the court of appeal correctly determined, the law requires more. The officer's testimony failed to establish articulable facts that created a reasonable suspicion that danger existed, and it does not reflect anything more than an "inchoate and unparticularized suspicion or `hunch,' that the defendant was armed." United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).
Moreover, as the court of appeal observed, the police could not "bootstrap" the illegal frisk into probable cause for an arrest when the defendant lost his composure and swung his elbow into Officer Germann's chest as Louisiana has long followed a distinctly minority rule that an individual may lawfully resist an illegal arrest. In State v. Stowe, 93- 2020 (La.4/11/94), 635 So.2d 168, 176, this Court stated:
The right of personal liberty is one of the fundamental rights guaranteed to every citizen, and any unlawful interference with it may be resisted. Every person has the right to resist an unlawful arrest, and in preventing such illegal restraint of his liberty, he may use such force as necessary.
Citing, City of Monroe v. Ducas, 203 La. 971, 14 So.2d 781, 784 (La.1943). Applied in the present context, that principle allowed the defendant, although lawfully detained by the officers, to resist a search which was not "reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
For the aforementioned reasons, I respectfully dissent.
NOTES
[1] Defense counsel did not raise as error the officers' decision to frisk defendant.
[2] Under State v. Crosby, 338 So.2d 584 (La. 1976), an accused may enter a guilty plea, reserving his right to appellate review of pre-plea assignments of error.
[3] As the court of appeal noted, the testimony reflects that Officer Germann could not recall the exact time he stopped defendant, but that it was past curfew time. The officers stopped defendant on April 30, 2001a Monday. On weekdays during the school year in New Orleans, "a minor cannot remain in a public place or on the premises of an establishment" between the hours of 8:00 p.m. and 6:00 a.m. See City of New Orleans Municipal Code, sec. 54-414.
[4] In fact, when asked specifically if he suspected the defendant of possessing any weapons, the officer merely stated: "I felt he might have a weapon. He was by a police car, and I asked him if he was a police officer. And he replied, `No.'"
[5] See La.Rev.Stat. 14:108(A) ("Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest... when the offender knows or has reason to know that the person arresting ... is acting in his official capacity."); see also La.Code Crim. Proc. art. 220 ("A person shall submit peaceably to a lawful arrest ....") (emphasis added).
[6] La.Rev.Stat. 14:108 was passed in 1952. The predecessor to La.Code Crim. Proc. art. 220, La.Rev.Stat. 15:64, was passed in 1928. La.Rev.Stat. 15:64 provided: "Everyone must submit peaceably to a lawful arrest, and, if he resists, any person lawfully arresting him may use such force as may be necessary to overcome the resistance."
[7] Because the Blackman court ultimately concluded that the Terry frisk at issue in that case was lawful, its sentiments regarding the right to resist forcefully an unlawful Terry stop were not essential to that court's holding. We nonetheless find its reasoning persuasive.