JAMES F. McKAY III, Judge.
 

 _JjThe defendant-appellant seeks to have his guilty plea vacated on the grounds that the trial court’s judgment denying his motion to suppress the physical evidence was in error and must be reversed. For the reasons discussed below, we affirm the judgment of the trial court.
 

 PROCEDURAL HISTORY OF CASE
 

 On October 14, 2009, the State filed a bill of information charging the defendant with one count of possession of cocaine, a violation of La. R.S. 40:967. Because of problems serving the defendant, his arraignment did not occur until May 14, 2010, at which time he entered a not guilty plea. The court conducted the motion to suppress the evidence and preliminary hearing on July 27, 2010. After hearing testimony and argument, the court found probable cause to sustain the charge and denied the motion to suppress. The defendant objected and gave his notice of intent to seek writs. His writ application to this Court was denied in an unpublished writ
 
 *732
 
 disposition.
 
 State v. Sander,
 
 2010-1211 (La.App. 4 Cir. 9/16/10).
 
 [1]
 

 |2Four days later, on September 20, 2010, the defendant entered a plea of guilty as charged pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976), thus reserving his right to seek appellate review of the trial court’s ruling on his motion to suppress. The court accepted the plea under La.C.Cr.P. art. 893 and deferred the imposition of sentence. The court placed the defendant on two years active probation and ordered him to pay $500.00 to the Judicial Expense Fund and $190.50 in court costs. The defendant filed a motion for appeal which the court granted. This appeal follows.
 

 STATEMENT OF THE FACTS
 

 Because the defendant entered a plea of guilty, no trial was held. The facts of the offense can be ascertained from the pretrial motion hearing transcript which is contained in the record. Because the circumstances surrounding the seizure of the evidence are pertinent to the assignment of error raised by the defendant, the evidence pertaining to the motion to suppress is included in this summary of the facts.
 

 The sole witness at the motion hearing was Officer Ananin Mitchell, assigned to the Fifth District since December 2008, and a New Orleans police officer since August 2008. Officer Mitchell testified that on the date he arrested the defendant, he and his partner were on patrol in the area of St. Claude Avenue and Port Street in a marked police vehicle. The area was described by Officer Mitchell as “a known location for heavy drug trafficking, drug activity, and prostitution.” As the officers’ vehicle approached the intersection of St. Claude and Port, they saw a young black male on a bicycle approach an older white male, later identified as the defendant, who was in front of a store. Officer Mitchell stated that the two men “briefly made a hand gesture toward each other, as in a Rdrug transaction.” When the defendant and the young man with the bicycle saw the approaching marked police car, “they kind of went upon their ways in a brisk action.” Officer Mitchell described the hand gesture between the men as “a quick hand-to hand transaction like they were transferring something.” Based on the observations and knowledge of the area, Officer Mitchell and his partner decided to conduct “a suspicious persons check” of the two men.
 

 The defendant and the other man were stopped and detained. Officer Mitchell frisked the men with negative results. Also, the officers ran the names of the suspects through the NCIC motions system, which again yielded negative results. At the time of the stop, the defendant placed an open pouch of Bugler tobacco
 
 [2]
 
 on the hood of the police vehicle. At the conclusion of the warrant checks of the men, in preparation for allowing them to leave, Officer Mitchell picked up the Bugler package to return it to the defendant. As he did so, a white piece of paper dropped out of the package. On direct examination, Officer Mitchell testified that he “picked up the white piece of paper, because it was folded, to see [if] anything was inside of it. Upon handing it back to the defendant, I noticed it had two rock-like substances on the inside of it.” Based upon this observation, Officer Mitchell
 
 *733
 
 placed the defendant under arrest for possession of cocaine.
 

 In additional direct testimony Officer Mitchell stated that, when the defendant and the younger man saw the police car, the defendant tried to walk inside the store on the corner. At the same time, the young male, who had gotten off his bicycle, “attempted to walk away from the individual [the defendant].” At |4the time of this incident, the defendant was carrying a clear plastic bag containing food in one of his hands.
 

 During cross-examination, Officer Mitchell stated that he and his partner were on routine proactive patrol on the morning of the defendant’s arrest; they were not responding to a particular complaint. Officer Mitchell was driving the police car. At the time he saw the suspicious hand gesture between the defendant and the second man, Officer Mitchell estimated that he was between five and twelve feet from the two men. He stated further that both men were cooperative during the stop and frisk. They placed their hands on the police vehicle pursuant to a directive from Officer Mitchell; the defendant placed the “Bugler” pouch on the vehicle for the same reason. Because the men had no outstanding warrants and the frisks were negative, the officers were preparing to allow the men to leave when the white paper fell out of the “Bugler” pouch.
 

 During redirect examination, the prosecutor asked Officer Mitchell if, when the white paper fell out of the pouch, he suspected that it contained contraband. Officer Mitchell replied that he did not suspect it was contraband, but that he thought “it was kind of odd to have a white piece of folded paper inside of a “Bugler” pack with nothing but tobacco inside of it.” Officer Mitchell did not explain how he knew that the only thing in the pouch was the paper and tobacco.
 

 Following the redirect examination of Officer Mitchell, the court questioned him at some length regarding the incident. The court first asked if the officer had observed the defendant leave the corner store. Officer Mitchell said that he had not; instead the defendant had stated that he had come from the store, and he had a bag of hot food in his hand. The court then asked Officer Mitchell to show the action which appeared to be a “quick hand-to-hand transferring something.” |fiOfficer Mitchell testified that the male on the bicycle rode up; the defendant approached him; and then the cyclist appeared to use his right hand to give something to the defendant. The defendant “in a real quick motion” placed his hand in his right pocket. Officer Mitchell admitted that he could not see what was in their hands, and when he patted down the defendant, he found nothing in his pocket. At that point, Officer Mitchell explained that the defendant was taking the “Bugler” pouch out of his right pocket. The pouch was open.
 

 At the very conclusion of the court’s questioning of the witness, the court asked Officer Mitchell whether, as he picked up the folded piece of paper which he described as printing paper, if he could “feel that there was something in it?” Officer Mitchell responded that he could feel something. When the court asked him what he felt, Officer Mitchell replied: “It felt rocky-like[,] and I opened it up to see what was inside of it[,] and that’s when I observed the two, rock-like substances on the inside of it.”
 

 ERRORS PATENT
 

 A review of the record for errors patent reveals none.
 

 DISCUSSION
 

 In his sole assignment of error, the appellant argues that Officer Mitchell exceeded the scope of an investigatory stop
 
 *734
 
 when he opened the folded-up piece of paper to see what was inside. Thus, he contends, the evidence should have been suppressed by the trial court as there was no other basis to seize the evidence without a warrant. In particular, he argues that the “plain feel” exception to the warrant requirement does not apply in this case.
 

 At the conclusion of Officer Mitchell’s testimony at the motion hearing, the defense counsel argued first that the initial stop of the defendant was not based on | nsufficient facts. Counsel then argued that the search of the folded-up piece of paper exceeded the scope of a frisk for weapons and that Officer Mitchell’s testimony failed to establish a justification for a frisk for weapons. In response, the State argued that the stop was justified given the nature of the area and the observations made by Officer Mitchell. The State further argued that Officer Mitchell was acting properly when he picked up the piece of paper to give it back to the defendant, and as he was doing this, he felt the rock-like substance. The State argued that the earlier observations of the defendant’s activity coupled with the rock-like feeling of the substance in the paper “renewed his earlier suspicion that there was a drug transaction that occurred.” Thus, according to the State, Officer Mitchell did not act improperly when he unfolded the paper to confirm his suspicion that crack cocaine was concealed inside.
 

 After hearing these arguments, the trial court rejected the defense counsel’s contentions and explicitly accepted the State’s argument.
 

 The threshold question to be decided is whether Officer Mitchell and his partner had reasonable suspicion to justify an investigatory stop of the defendant. The standard to determine whether a sufficient basis for a legal stop existed was set out in
 
 State v. Fearheiley,
 
 08-0307, pp. 1-2 (La.4/18/08), 979 So.2d 487, 488:
 

 While the police may not detain individuals on the basis of an “ ‘inchoate and unparticularized suspicion or “hunch,” ’ ”
 
 United States v. Sokolow,
 
 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting
 
 Terry v. Ohio,
 
 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)), in determining whether reasonable suspicion exists to conduct an investigatory stop,
 
 ie.,
 
 whether the police possessed the requisite “minimal level of objective justification,”
 
 INS v. Delgado,
 
 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984), courts must take into account the totality of the circumstances in a process that allows the police “ ‘to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that “might well elude an untrained person.” ’ ”
 
 State v. Johnson,
 
 01-2081, p. 3, 815 So.2d 7809, 811 (quoting
 
 United States v. Arvizu,
 
 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002)) (internal quotation marks and citations omitted).
 

 An experienced police officer’s observation of hand movements consistent with a drug transaction, even if he cannot observe what was exchanged, may provide “the requisite minimal objective basis for an investigatory stop.”
 
 State v. Pratt,
 
 08-1819, p. 2 (La.9/4/09), 16 So.3d 1163, 1165. Also, the reputation of an area is an articu-lable fact upon which a police officer may legitimately rely and is therefore relevant in the determination of reasonable suspicion.
 
 State v. Temple,
 
 02-1895, p. 5 (La.9/9/03), 854 So.2d 856, 860. Additionally, as stated in
 
 State v. Seltzer,
 
 08-34, p. 8 (La.App. 5 Cir. 5/27/08), 986 So.2d 762, 767:
 

 
 *735
 
 While an individual’s mere presence in a high-crime area alone is insufficient to justify an investigatory stop, his presence in a high-crime area coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop. [Citation omitted.]
 

 See also
 
 State v. Schaffer,
 
 99-0766 (La.App. 4 Cir. 4/12/00), 767 So.2d 49 and
 
 State v. Fortier,
 
 99-0244 (La.App. 4 Cir. 1/26/00), 756 So.2d 455, in which officers on patrol saw the defendant straddling a bicycle, showing something in his hand to another man. When the officers approached, the other man quickly walked away, while the defendant reached down to his sock and then began to ride away. The officers stopped the defendant, frisked him, and found marijuana in his sock. This Court upheld the seizure of evidence.
 

 Here, Officer Mitchell articulated sufficient facts which support his decision to conduct an investigatory stop of the defendant and the man who appeared to hand him drugs. The area was known for drug trafficking. Both the defendant and the cyclist, upon noticing the police car, immediately moved apart and appeared to attempt to avoid any contact with the approaching officers. The fact that the Isdefendant tried to enter a store from which he had recently come, and that the other man was prepared to abandon the bicycle he had been riding, certainly appeared suspicious. Finally, the defendant’s gesture toward his pocket immediately after contact with the other man’s hand was consistent with an attempt to conceal something.
 

 Hence, there was sufficient basis for an investigatory stop.
 

 If an officer stops a person pursuant to La.C.Cr.P. art. 215.1, the officer may conduct a limited pat down frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La. C.Cr.P. art. 215.1(B). In
 
 State v. Sims,
 
 02-2208 (La.6/27/03), 851 So.2d 1039, the court noted that a police officer’s authority to frisk a person stopped pursuant to La. C.Cr.P. art. 215.1(A) is subject to an objective standard on review:
 

 An officer’s right to conduct a protective frisk is codified in La.Code Crim. Proc. art. 215.1(B), which provides that “[w]hen a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon.” While it is true that an officer is never justified in conducting a pat-down for weapons unless the original investigatory stop itself was justified, a lawful detention for questioning does not automatically give the officer authority to conduct a pat-down for weapons.
 
 State v. Hunter,
 
 375 So.2d 99, 101 (La.1979). Even after a lawful investigatory stop, a police officer may frisk the suspect only where a reasonably prudent person would be warranted in the belief that his safety or that of others is in danger. La.Code Crim. Proc. art. 215.1(B);
 
 Terry,
 
 392 U.S. at 21, 88 S.Ct. at 1880. Therefore, the reasonableness of a frisk is governed by an objective standard.
 
 State v. Dumas,
 
 00-0862, pp. 2-3 (La.5/04/01), 786 So.2d 80, 81.
 

 The officer’s suspicion that he is in danger is not reasonable unless the officer can point to particular facts which led him to believe that the individual was armed and dangerous.
 
 Hunter,
 
 375 So.2d at 101. The officer need not establish that it was more probable than not that the detained individual was armed and dangerous. Rather, it is sufficient that the officer establish a “sub
 
 *736
 
 stantial possibility” of danger.
 
 Id.
 
 at 102. In determining the lawfulness of an officer’s frisk of a suspect, courts must give due weight, not to an officer’s “inchoate ^and unparticularized suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.”
 
 Terry,
 
 892 U.S. at 21, 88 S.Ct. at 1880.
 

 Sims,
 
 02-2208, p. 6, 851 So.2d at 1043-44.
 

 Here, Officer Mitchell did not testify to any particular facts which entered into his decision to conduct a frisk for weapons. This omission in part is understandable as no contraband or evidence was found during the frisk, and thus the State at the hearing did not question the officer about his reasons for conducting a frisk. In any event, whether or not Officer Mitchell frisked the defendant, he could legitimately ask the defendant to place the tobacco pouch on the police car during the pendency of the investigatory stop. By removing the pouch from the defendant’s physical possession, Officer Mitchell could be more confident that, if a weapon such as a razor blade was concealed inside, the defendant would not have access to it during the interview process. Also, directing the defendant to place the pouch on the police car placed no restriction effect on the defendant’s freedom to be left alone beyond that involved in the investigatory stop itself.
 

 Relevant to this appeal is whether Officer Mitchell lawfully opened the folded-up paper that fell out of the tobacco pouch. The appellant argues that the officer’s testimony failed to demonstrate that the war-rantless search and seizure fell within the “plain feel” exception to the warrant requirement. Further, he contends that it was only due to Officer Mitchell’s handling of the tobacco pouch that the paper fell out of it. However, as discussed above, it was reasonable of the officer to have the defendant place the pouch on the vehicle during the pendency of the investigatory stop. According to his testimony, Officer Mitchell was in the process of returning the pouch to the defendant when the paper fell out; there was 110nothing in the testimony to indicate that the officer manipulated the pouch or intentionally caused its contents to fall out.
 

 The “plain feel” exception to the warrant requirement was addressed by the Louisiana Supreme Court in
 
 State v. Boyer,
 
 07-0476, p. 22 (La.10/16/07), 967 So.2d 458, 472:
 

 In
 
 Minnesota v. Dickerson,
 
 508 U.S. 366, 371, 113 S.Ct. 2130, 2134, 124 L.Ed.2d 334 (1993), the Supreme Court addressed whether nonthreatening contraband detected through the sense of touch during a
 
 Terry
 
 patdown may be admitted into evidence. Analogizing to the “plain view” doctrine, which provides that if police are lawfully in a position to view an object and its incriminating character is immediately apparent they may seize it without a warrant,
 
 see, Horton v. California,
 
 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2307-08, 110 L.Ed.2d 112 (1990), the
 
 Dickerson
 
 Court held if a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; its warrant-less seizure is justified by the same practical considerations that inhere in the plain-view context.
 
 Dickerson,
 
 508 U.S. at 375-76, 113 S.Ct. at 2136-37.
 

 As discussed above, Officer Mitchell was acting properly at the time he picked up the paper to hand it to the defendant at the conclusion of the investigatory stop. Officer Mitchell testified clearly during the
 
 *737
 
 court’s questioning that he could feel that there was something inside the paper which “felt rocky-like.” However, Officer Mitchell never testified specifically that it was immediately apparent to him that the contents were pieces of crack cocaine. Similarly, the jurisprudence relied upon by the appellant involved situations where the police officers could not articulate that the containers found in the defendants’ possession (film canisters, matchboxes, and cigarette packs) had contraband inside without opening the containers for further inspection. Nevertheless, in this case, Officer Mitchell stated that there was a “rocky-like” feel to the object or objects Ininside the small folded piece of paper; this is consistent with and suggests that the items were immediately apparent as pieces of crack cocaine, which are described as “rocks.”
 

 The trial court clearly concluded that the officer did have probable cause to search the paper. Probable cause means “a fair probability that contraband ... will be found.”
 
 Illinois v. Gates,
 
 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Whether probable cause exists must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act.
 
 State v. Fisher,
 
 97-1133, p. 8 (La.9/9/98), 720 So.2d 1179, 1184, citing
 
 State v. Raheem,
 
 464 So.2d 293, 296 (La.1985).
 

 In this case, Officer Mitchell had reasonable suspicion to believe that the defendant had engaged in a drug transaction, considering the totality of the circumstances. The officer also observed the defendant immediately reach into his right pocket after the brief interaction with the man on the bicycle. The defendant pulled the “Bugler” pouch out of that pocket and had it in his hand when he was stopped. The pouch was open, and the piece of paper subsequently fell out of it. The contents of the piece of paper, which Officer Mitchell testified was an odd thing to have in a tobacco pouch, had a rocky feel. Taking all these facts together, Officer Mitchell had probable cause to believe that the defendant had just purchased crack cocaine wrapped in a bit of folded-up paper and had placed it in the tobacco pouch. After the paper accidentally fell out of the pouch and he felt the rock-like contents, Officer Mitchell had probable cause to open it.
 

 It is well-settled that an appellate court should review a trial court ruling under a deferential standard with regard to factual determinations, while legal findings are subject to a
 
 de novo
 
 standard of review.
 
 State v. Hunt,
 
 09-1589, p. 6 12(La.12/1/09), 25 So.3d 746, 751;
 
 State v. Hampton,
 
 98-0331, p. 18 (La.4/23/99), 750 So.2d 867, 884. Moreover, a trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion.
 
 State v. Wells,
 
 08-2262 (La.7/6/10), 45 So.3d 577.
 

 A review of the entire hearing transcript supports the trial court’s conclusion that Officer Mitchell had not violated any constitutional restrictions against unreasonable searches and seizures. Thus, the evidence was lawfully seized and was not subject to suppression. The court’s ruling was not manifestly erroneous and will not be disturbed on appeal.
 

 Because the trial court’s ruling on the motion to suppress was not erroneous, the defendant’s guilty plea is affirmed.
 

 AFFIRMED
 

 [1]
 

 . The Court found that the district court’s ruling was not an abuse of discretion;, nevertheless, the Court stated that, if the defendant were convicted, he could re-raise the issue on appeal.
 

 [2]
 

 . Officer Mitchell slated that "Bugler” tobacco is placed "inside of reefer paper to smoke cigarettes.” "Bugler” is the particular brand name of the tobacco.